## No. 1172.

### ALLEN, WEST & BUSH vs. J. E. NETTLES, ADMINISTRATOR.

In a suit against an administrator for a balance of account, unappealable in amount, the defendant reconvenes, claiming payment to succession of $7000, proceeds of cotton sold and credited in plaintiff's account. Held: that as any allowance made on defendant's demand necessarily increased the ordinary balance due plaintiff, this involves adjustment of entire account and the whole case is appealable.

Where mercantile accounts have been closed by rendition and acceptance without objection, the debtor cannot thereafter object to charges of 8 per cent interest and to compounding interest by capitalization of succession balances.

Such settlement of accounts being equivalent to payment, the debtor can only recover usurious charges less than one year old.

Under the 3d section of Act 44 of 1882, the consignee, from the date of consignment under bill of lading, acquires a perfect pledge with right to sell and pay his debt with the proceeds. The death of the consignor, after the consignment, could not affect such rights.

But no consignment made after the death of the owner by an unauthorized person could operate to create a pledge in favor of the consignee. The death fixed the rights of all creditors as to the succession property and no one could acquire any new privilege thereon.

APPEAL from the Sixth District Court, Parish of Morehouse. *Ellis, J.*

___

*Todd & Todd* and *S. T. Baird,* for Plaintiffs and Appellants.

*Newton & Cason and Boatner & Boatner,* for Defendant and Appellee.

*Bussey & Naff,* for Intervenors and Appellees:

___

The opinion of the Court was delivered by

FENNER, J. Plaintiffs sued defendant as administrator of Elbert Nettles for a balance of account of $749.51. The accounts from which this balance results include sales of a large amount of cotton which was received and sold by plaintiffs and credited to defendant in ac-

count. The defendant denies that the balance claimed is due, and files a demand in reconvention, in which he claims a judgment against plaintiffs for the proceeds of said cotton, amounting, as alleged, to more than $7000, on the ground that said proceeds are property of the succession, and, as such, must be paid over to the administrator to be administered and distributed according to law.

Plaintiffs are appellants from a judgment condemning them to pay to the administrator the sum of $992.09, the value of twenty-nine bales of cotton, adjudged to have been received by plaintiffs after the death of Nettles, and giving a judgment in favor of plaintiffs to be paid in course of administration for $1062.42.

Thus, it will be seen, that plaintiffs recover judgment for several hundred dollars' more than they claimed in their petition. This results from the fact that in condemning plaintiffs to pay over to the succession the proceeds of cotton which had been credited on the account, this necessarily increased *pro tanto* the balance due on said account, and if the value of all the cotton claimed by defendant, say $7000, had been allowed, it would, in the same measure, have increased the amount due to the plaintiffs as ordinary creditors.

We mention these matters at the threshold of the case in order to dispose of the motion made by defendant to dismiss the appeal as to the principal demand because that is not within our jurisdiction.

Ordinarily the motion would be well taken, because it is well settled that an appealable demand in reconvention does not give us jurisdiction of an unappealable principal demand, and *vice versa*.

But we regard this as an exceptional case, in which the principal and reconventional demand are so interlaced that one cannot be considered without the other. The issue, as framed by the pleadings, involves the adjustment of the entire account between the parties, in which the claims on both sides must be considered, and this adjustment includes an amount in dispute exceeding two thousand dollars.

The motion to dismiss is therefore denied.

### On the Merits.

We will first dispose of defendant's objections to the account on the ground of excessive charges of interest, commissions, etc.

Plaintiffs had conducted a large business with Elbert Nettles for a number of years prior to his death.

In the course thereof accounts and statements had been frequently rendered to him, informing him fully of the nature of the charges made against him, and balances had been frequently struck and car-

ried forward into new accounts. He received these accounts, and never made any objections to them. The last one before his death was rendered on August 26, 1885, and the account on which the present suit is based begins with the entry: "1885, August 26. To balance account rendered, $2574.43."

Defendant now seeks to overhaul these accounts from 1881, and claims, and was allowed a deduction of $407.01 for overcharges of interest resulting from the charge of 8 per cent interest, and from the compounding thereof by capitalizing, in the succeeding accounts, the balances from those preceding. We think this was error.

So far as these matters are concerned, the defendant cannot go beyond the accounts which have been rendered to and accepted by him without objection. Parol evidence cannot be received to prove a convention to pay 8 per cent interest, but when such charges have been made, and an account containing them has been rendered and accepted, the account becomes an account stated; the balance represents a settlement between the parties to pay which a promise is implied, and such settlement can no more be impeached on the ground that such charges are included therein, than if the account had been paid and the action were to recover them.

See on this general subject: Lallande vs. Breaux, 5 Ann. 505; Millaudon vs. Sylvestre, 8 La. 267; White vs. Henderson, 2 Ann. 241; Compton vs. Compton, 5 Ann. 618; Thompson vs. Mylne, 4 Ann. 206; Pickersgill vs. Brown, 7 Ann. 298; Sentell vs. Kennedy, 29 Ann. 679.

Defendant can only claim the reduction to 5 per cent of the interest charged in the last accounts of February 11 and August 29, 1886. This, according to our calculation, reduces the balance of the last-mentioned account by $100.

Another deduction was claimed of two usurious charges of 2½ per cent for advances in addition to 8 per cent interest. Both these charges, amounting to $87.17, were contained in accounts which had been rendered to deceased, and being more than a year old, they cannot be recovered. C. C. 2924. The allowance of these by the judge was error.

The deduction allowed to defendant of $95, charged under the contract, for commissions on cotton not shipped, was correct. Nettles was to ship a bale of cotton for every ten dollars advanced, and was to pay a commission of $1.25 for each bale deficient. We can discover no deficiency. The contract was made for the Girard account, and it appears that defendant shipped 24 bales on that account, and did not receive advances exceeding $240.

Another deduction of $100 was allowed in correction of a supposed error in extending on the account, as the proceeds of three bales of cotton, $14.14, instead of $114.14. An examination will show, that although the extension of only $14.14 does appear in the copy of the account, yet this is a mere mistake in copying, and that in the addition of credits the correct amount of $114.14 is included.

Thus, it appears that the deductions of $689.18, allowed by the judge in favor of defendants on the foregoing matters, should be reduced to $195.

At the death of Nettles plaintiffs had on hand, unsold, a number of bales of cotton shipped for his account, and more were received shortly after his death.

The defendant administrator contends that plaintiffs are bound to pay over to the administrator the whole proceeds of all the cotton sold after the death of Nettles, and to assert their privilege (if any they have), on those proceeds contradictorily with other creditors.

So far as any cotton is concerned which had been consigned prior to the death of Nettles, although not sold and not even received till after his death, this contention is absolutely without force.

The third section of act No. 44 of 1882 provides: "That all merchants, factors and others who may have a general balance of accounts or any sum of money due them by any consignor or other person sending them cotton, sugar, etc., for sale, for the purpose of paying such balance of account or sum of money due, shall have a pledge upon all such property consigned or sent to them * * from the time the bill of lading or receipt thereof by the carrier is deposited in the mail or given to the carrier for transmission, which pledge shall be perfect, with the right of sale of said property, which shall be fully vested in said consignee, with the right to appropriate the proceeds of sale to the payment of the amount due such consignee; provided, that nothing herein shall be so construed as to defeat or lessen the privilege of the laborers and landlords in this State for wages and rents as now existing by law, nor as defeating or lessening any other valid *existing* privileges or liens."

Here we have an explicit provision that the mere fact of consignment evidenced by bill of lading, shall operate a perfect and instantaneous pledge, with the absolute right in the consignee to sell and pay his debt with the proceeds, subject to no limitation except in favor of *existing* privileges, which means privileges existing prior to the consignment. It is impossible to conceive how the death of the consignor after the consignment could defeat such clear and perfect vested rights

conferred by the law itself. The proposition is really not worthy of further consideration. See Jacquet vs. His Creditors, 38 Ann. 863; Rasch vs. Creditors, 1 Ann. 31; Jerome vs. McCarter, 94 U. S. 73.

A different question, however, is presented with reference to the cotton consigned after Nettles' death. At the moment of death plaintiffs had no kind of privilege or pledge on this cotton, which passed immediately into the succession of Nettles, and became subject, *instanter*, to all the rights and privileges of creditors, which were absolutely fixed by the death, and could not be thereafter changed or affected by any act of the administrator or any other person.

This court has said: "Privileges and mortgages rightfully acquired before the death are respected; but with that exception the property of a succession is a common fund, the equal pledge of all the creditors; and one is not permitted, by superior diligence, or by dealing with the executor, to get an advantage over others." Boyce vs. Escoffie, 2 Ann. 872.

So we have held that "a privilege recorded after the death of the debtor cannot affect creditors, whose rights become fixed at the date of the death." Suc. Rhoton (syllabus), 34 Ann. 893.

Neither the administrator nor any unauthorized person could do any act after the death of Nettles the effect of which would be to confer upon plaintiffs a privilege or right of pledge on the property of his succession which did not exist at the moment of his death.

In this case, the cotton consigned after his death seems to have been consigned before the administrator was appointed, by some one who had no authority whatever.

It follows that plaintiffs must account to the succession for the proceeds of cotton consigned after the death.

It does not, however, follow that cotton received shortly after his death may not have been consigned before; and we agree with the judge *a quo* that defendant has supported his reconventional demand by no evidence establishing that more than 29 bales were consigned after the death; but as to that amount of cotton the proof is certain by production of the bills of lading which are dated after the death.

We shall adopt the judgment rendered below with an amendment, correcting his excessive allowance of deductions claimed by defendant.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by increasing the principal of the judgment against defendant from "$1,062.42" to $1,556.60, and that, as thus amended, the same be now affirmed, defendant and appellee to pay costs of this appeal.

Mr. Justice Todd takes no part.