On the Merits.
(Feb. 1, 1904.)
This is a suit by the plaintiff firm to recover property pledged by their transferror to defendant.
Defendant is the uncle of Charles H. Charlton, Jr. The nephew borrowed money from him at various times, in representation of which loan he executed his promissory notes, collaterally secured by pledge of a number of articles of jewelry, 1 share of stock in the Young Men’s Gymnastic Club, and 70 debenture bonds, with certain coupons attached, *285 issued to Charles H. Charlton, Jr., by the Cincinnati Debenture Company, afterwards the Columbus Debenture Company of Columbus, Ohio. While these articles were still in pledge, the pledgor sold and transferred them to the plaintiff firm, in which his brother was a partner; subrogating it to all his rights against the pledgee and the Columbus Debenture Company.
The consideration of this sale was the sum of $1,500 cash paid by the firm to the vendor, the assumption by it of any balance still due by him to his uncle; the firm additionally agreeing to hold him harmless if any legal proceedings were necessary to recover the property, and to pay his attorneys $500 out of the first moneys which they would realize out of it.
In the act of sale the vendor declared that there might still be a small balance due by him on his loans.
The prayer of the plaintiffs in the present suit brought by them against the pledgee, Charles H. Charlton, is that, after due proceedings, there be judgment against him, ordering him to account to them for the various dealings he had with Charles H. Charlton, Jr., and ordering him to deliver to them all the property pledged, upon payment to him of any balance which might be due him upon the accounting, and that, upon failure to so deliver the property, there be judgment in their favor for $3,043.50, with legal interest from judicial demand, and that he be enjoined from disposing of the property pending the suit.
The amount for which judgment was contingently asked was the amount fixed by the plaintiffs as the value of the property.
In their petition plaintiffs averred that they had called upon defendant to render an account in the premises, and had offered to pay him any balance which might be legally due him on the said account; but he refused and neglected to do so, or to state what his claims were. They averred that Charles H. Charlton, Jr., had paid the defendant all the moneys which he had borrowed from him. except about $150; that, in ignorance of the exact sum which might be due him, they had tendered him $150 in payment, and called upon him to deliver. the property, but he had refused to accept the tender and deliver the property which had been so pledged, or to give them any satisfaction in the premises. The preliminary injunction prayed for was granted' and issued.
Defendant objected to the petition filed on the ground that it disclosed no legal or valid right or cause of action against him; that the same was too vague, general, and indefinite; that plaintiffs had mistaken their remedy, if any they had, which was denied. He prayed that plaintiffs’ suit be dismissed.
The court maintained the exceptions which had been filed, in so far as to order the plaintiffs to amend their petition by setting forth their demand more fully in accordance with views orallj' expressed.
Plaintiffs filed an amended and supplemental petition, annexing and making part of the same a statement which they averred, to the best of their knowledge and belief, and from the data in their possession, showed the account between their assignor and the defendant; that, as shown by the said statement, there was due to the defendant, to the best of their knowledge and belief, the sum of $30, which sum was° included in the tender made to the defendant as set out in the original petition. They reiterated the prayer of that petition, and prayed that there be judgment against • them for $34.50, but without costs, in view of their tender, upon defendants delivering to them the property described in the original petition, and, on failure to deliver the said property, that they have judgment for the value thereof, as set out in the original petition, less the sum of $30, as shown by the annexed statement. Defendant first filed a general denial. He subsequently filed an amended and supple *287 mental answer, containing a statement of the account between himself and Charles H. Charlton, Jr., as he understood it, and, in reconvention, prayed for judgment against the plaintiffs upon their assumption of the debt due by assignor to respondent.
Defendant having sought the benefit of a settlement made between him and Charles I-I. Charlton, Jr., transferror to plaintiff; and, plaintiff having objected that it covered usurious items, the defendant pleaded the prescription of 12 months between the date of settlement and the date suit was filed, as a bar to any inquiry into the subject of usury.
The district court rendered judgment in favor of the defendant against the firm of Dannenmann & Charlton, and the individual members of the firm in solido, dismissing their suit, and dissolving the preliminary injunction which had issued. It rendered further judgment in favor of the defendant as plaintiff in reconvention against'the firm of Dannenmann & Charlton, and the individual members thereof in solido, for the sum of $979.50, with interest at 8 per cent, per annum on various amounts, and from various dates specified, subject to certain declared credits, with interest thereon and for attorney’s fees.
There was a settlement of accounts arrived at between Charlton, Jr., transferror to plaintiff, and the defendant.
The dates of items of settlement and the character of'these items show that these parties conferred about that time in regard to their business. This view is sustained by oral testimony, and, in addition, a note of $1,000 was executed by Charlton, -Jr., to be placed, he says, to the credit of general account. There remains an unpaid balance on this note of $235.70.
The amount paid by Charlton, Jr., on this note was credited to defendant’s account in satisfaction of the items to which plaintiffs, as transferees of Charlton, Jr., now object; that is, on December 9th and December 11th of 1889, according to the defendant and to his bookkeeper, who was present, plaintiffs transferror paid a number of defendant’s claims, as shown by a statement which was in plaintiff’s possession at the time suit was brought. Plaintiff now contends, after more than 12 months had elapsed prior to suit (from date of settlement), that some of these debts were for usurious interest.
The statement in question, in the hands of plaintiff, has every appearance of being a complete statement. It shows the disposition which was made of the proceeds of the note. Just below there is a memorandum of indebtedness still open June 15th.
The last memorandum is seized upon by plaintiff as showing that' the account was left open.
The last memorandum of items does not include the first memorandum, above mentioned. The statement may have been compílete as to the former, and left open as to the latter.
Another statement is made out by defendant and offered by him in evidence, which statement, we are informed by the testimony of defendant and his clerk, is also correctly made.
It happens that near the end of this statement, barred off, there is a memorandum which sets forth an indebtedness still open June 15, 1900, some time after the alleged settlement of December, 1889, and within 12 months prior to suit,. and which, if taken as correct as to all items of the account, would take defendant’s settlement out of the grasp of the 12-months prescription which he pleads. As this is a question of fact, we insert testimony in point at this time:
“Q. Now, before you leave the stand, I want to call your attention to this particular thing: That on this statement which purports to have been handed Mr. Charlton between December 9 and December 11, 1899, there is a memorandum of indebtedness still open on June 15, 1900?
“A. That is readily explained, sir.
“Q. Explain it then, please.
“A. At the time that settlement was made, he requested me to figure up what his indebted *289 ness would be about June, 1900, as be bad some large contracts he was figuring on, that would enable him to meet it at the time, and he thought he could give a note for the entire amount.”
The fact is not denied, by Mr. Conrad, a witness for defendant. On the contrary, his 'testimony is corroborative. He says that there was a complete settlement, and that the memorandum in question had nothing to do with the settlement.
Plaintiff urges that there was no settlement at all, and, if there was a settlement, it was only made after June 15, 1900, and therefore the right to reject the usurious interest still remains.
The judge of the district court, who saw and heard the witnesses for defendant, accepted-their statements as correct in regard to the settlement. After having carefully read the testimony, we have not found that he has erred, viz., there was a settlement made December 4, and another December 11, 1899.
This brings us to a consideration of the last proposition — that no payment had been made, and, in consequence, plaintiff was still in time to defeat defendant’s demand based upon the settlement as made.
Prom defendant’s standpoint, sustained by a preponderance of testimony, there was a payment made as before mentioned. The proceeds of the $1,000 note, which note is nearly all paid, went toward paying the very claims which plaintiffs say have not been paid.
Granting that they — the items to which plaintiffs object — were not entirely paid, but that they were only paid in part, the following is authority for the proposition that partial payment will suffice:
“Whether usurious interest was included in it [the note] or not is immaterial, under the laws of this state. Subsequently, after several partial payments had been made, a settlement was had, and the defendants again, in writing, acknowledged themselves to be indebted to the plaintiff in the sum claimed,” as in the instant case. Carruth v. Carter & Bro., 26 La. Ann. 331. See, also, Mortgage Co. v. Ogden, 49 La. Ann. 8, 21 South. 116; Bank v. Regan, 40 La. Ann. 17-19, 3 South. 407.
The decision in Allen v. Nettles, 39 La. Ann. 790, 2 South. 602, has direct bearing upon the subject of usurious interest. The court said:.
“The defendant cannot go beyond the accounts which have been rendered to and accepted by him without objection.”
To the same effect is Leeds & Co. in Liquidation, 49 La. Ann. 501, 21 South. 617.
Plaintiffs point to item on statement on page 189, as follows:
“Bonus on City Hall Contract due August 9th, 1899 — $500.”
After some comment in general terms, the brief contains the following:
“Without further comment, I will leave the defendant to explain how he can charge his partner with a bonus of $500.”
This itself would have a shocking appearance, but we return to the record, and find that the defendant sought to explain, regarding this item, and the following shows the result. He was not permitted to testify.
“Q. Well, on your statement, then you charged the defendant, in the settlement of $1,000, with $510.17, as a bonus and deficit on the contract at the city hall?
“A. You want me to explain that to you, or answer it without explanation?
“Q. Answer it without an explanation, and then you can explain.
“A. Yes, sir; $19.17 for the deficit, and $500 for the bonus. Now you wish the explanation?
“Q. No. Whose contracts are these with the city ?”
It is scarcely possible, in view of plaintiff’s attitude in this matter to now hold that this claim demands explanation from defendant.
Erom the foregoing, it will be seen that he might have explained if the question had been pressed.
We cannot go into the question of illegality or usurious interest which has been settled and paid more than one year before a different disposition of the amount paid was claimed. The testimony shows that the ac *291 counts and settlement were made more than one year prior to suit.
We come next to a consideration of the debentures which Charlton, Jr., pledged to the defendant as security for his indebtedness to him.
In the next place, plaintiff asks for judgment for the amount of tlie debenture bonds in question. They object to the return of bonds they say have become worthless while in the possession of the pledgee, and that they were valuable when he accepted them as col-laterals.
We are not inclined to that view. These bonds had only a precarious value from the first. If they have become worthless, the record does not show that it was owing to defendant’s act. They will have to be returned by defendant to plaintiff. •
With reference to the injunction, plaintiff did not tender to defendant the amount to which he was entitled; besides the facts of the case do not show that strictly an injunction was necessary to protect plaintiff’s right. The action of the district court regarding this injunction has our approval.
For reasons assigned, the judgment appealed from is affirmed.
Rehearing denied June 30, 1904.