Egan vs. Fush.

No. 11,356.

THOMAS EGAN, JR., VS. CHARLES M. FUSH.

1. It is more than doubtful whether a sequestration will lie antecedent to the maturity of the debt sued on in any case except that indicated in Code of Practice, Art. 275, par. 6.

2. Conceding *arguendo* that the dismissal of an original petition does not necessarily dissolve a sequestration issued under it, and that the *status quo* of a seizure under it may be saved by a supplemental petition subsequently filed, yet, in order that same be rendered efficacious, it must be sworn to.

Egan vs. Fush.

3.  That in case the *original* suit and sequestration have proceeded on the theory that the debt is due at time of filing, a *supplemental* petition alleging the new and substantial fact that the debt has *become due since the suit was filed* changes the substance of the original demand in an important particular.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Frank McGloin* for Plaintiff and Appellee:

Objections to a writ of sequestration must be specially pleaded and a defendant can not advance new objections on appeal. Wells vs. St. Dizier, 9 An. 119.

One having a special mortgage or privilege upon property can, for proper cause, sequester same before the maturity of his debt. 14 La. 531; 17 La. 209; 4 An. 184; 23 An. 578; 23 An. 612.

Where a creditor has a special privilege upon particular property he is entitled to sequester same upon merely swearing that he fears the removal, etc., of same.   C. P. 275; 40 An. 825. This rule applies whether the debt be due or not.

Conservatory writs are *stricti juris*, but the courts can not impose conditions other than those established by the Legislature. Creditors entitled to sequestrations are not required by the Code of Practice, Art. 275, to do more than to swear to their own fears.   40 An. 825.

Where a creditor has sequestered before the maturity of his debt, he may, upon the arrival of the date of maturity, file a supplemental petition demanding judgment *in personam*.   17 La. 209; 23 An. 612.

The sale of the property affected by the privilege, in whole or substantial part, without paying or securing the debt, warrants the issuance of the writ of sequestration.   35 An. 488; 39 An. 761.

Non-payment of the debt, at maturity, justifies the sequestration. 40 An. 825.

While a writ must stand or fall according to the conditions at the time of its issuance, yet where the intentions of the debtor are matters of inquiry, his conduct immediately subsequent may be looked to with a view to ascertainment of such intent.

*W. S. Parkerson* Attorney for Defendant and Appellant:

Sequestration must depend upon the state of facts existing at the inception of suit.

Suit brought upon an obligation not due must be dismissed.

An amendment setting up facts, arising since the inception of suit, and changing the substance of the demand, will not be allowed.

Sequestrations like attachments are *strictissimi juris*, and every detail must be complied with, otherwise proceedings will be stricken with nullity.

Petition being dismissed for prematurity, the supplemental petition not being allowable, there is no suit, and the sequestration must be dissolved.

---

The opinion of the court was delivered by

WATKINS, J.  Suit was filed on the 23d of February, 1893, upon a promissory note maturing on the 18th of March following, accompanied by a writ of sequestration.

On the 27th of February following, the defendant moved to dissolve the sequestration upon two grounds, to-wit:

First, that the allegations of the petition are untrue.

Second, that the debt sued on was not due at date of suit.

On the 2d of March thereafter, defendant filed an exception of prematurity and no cause of action.

On the 9th of March the plaintiff filed a supplemental petition, setting up the maturity of the note sued on since the filing of the original petition.

On the 20th of March, 1893, the defendant filed an exception to the supplemental petition, on the ground that it changed the substance of the demand of the original petition, and was consequently inadmissible.

On the trial the exceptions were overruled as to the supplemental petition, the original petition was dismissed and the sequestration allowed to stand—the court *a qua* treating the supplemental petition, *in personam*, filed after the maturity of the note, and several days subsequent to the making of the affidavit, as the *inception* of the suit.

Subsequently the defendant filed an answer, reserving the benefit of his exceptions, and the cause went to judgment in favor of the plaintiff for the amount of his debt, sustaining the writ of sequestration, and enforcing the vendor's lien upon the property seized, and the defendant has appealed.

From the foregoing analysis of the pleadings and issues in this case, it is evident that the determinative questions are, first, whether the sequestration should have been dissolved on account of the alleged prematurity of the suit; second, whether the plaintiff's supplemental petition changed the substance of his original demand.

Reference to the petition discloses that suit was filed on the 23d of February, 1893, upon an unconditional obligation of the defendant, bearing date September 1, 1892, and maturing on the 1st of March following. That the prayer thereof is, " that, after due proceedings, there be judgment in favor of petitioner and against (the defendant) in the full sum of two thousand six hundred and sixty-six dollars and sixty seven cents, with vendor's privilege on the property described, and interest as claimed at eight per cent.,'" etc.

Alleging his vendor's lien upon certain movable property described as being in the defendant's possession, and swearing " that affiant fears that (the defendant) will conceal, part with, or dispose of" same during the pendency of the suit to the prejudice of his vendor's lien, the petitioner claimed and obtained a sequestration.

On this showing there is no doubt that suit was filed before the debt became due, and that an *absolute and unconditional judgment* was prayed for before same went to its maturity. Consequently, the exception of prematurity was well grounded, and the original petition was correctly dismissed by the judge *a quo.*

But just here the two preceding contentions enumerated arose in the court below—the judge maintaining the sequestration and holding the supplemental petition to be consistent with the original petition, and the inception of the suit.

I.

Was the sequestration properly issued, or correctly maintained— the original petition having been dismissed?

The supplemental petition was filed on the 9th of March, 1893, subsequent to the maturity of the debt, and also to the filing of defendant's exception of prematurity. It does not contain the reiteration of all the averments and charges of the original petition and is unaccompanied by any additional averment to the effect that the cause for the issuance of the writ of sequestration continued to exist, and no additional affidavit was made, order obtained, or bond

given in connection therewith. There is no provision of the Code of Practice which authorizes the issuance of a writ of sequestration *before the debt secured becomes due*, as in a case of attachment and provisional seizure.   C. P. 275 *et seq.*, 244, 287.

But in such case the code makes *special allegations* in the petition and accompanying affidavit necessary and essential.   For instance, in reference to an attachment, its requirement is " that in cases where the debt or obligation is not yet due, such an attachment may be granted  *  *  *  and it shall be lawful for any judge  *  *  *  to order a writ of attachment to issue whenever said judge shall be satisfied  *  *  .*  of the existence of said debt  *  *  *  and swears that said debtor *is about to remove his property out of the State before said debt becomes due"* etc.   C. P. 244.

In reference to a provisional seizure its requirements are " that it shall be sufficient to entitle a lessor to obtain said writ to swear to the amount which he claims, whether due or not due, and that he has good reasons to believe that said lessee will remove the furniture or property on which he has a lien or privilege out of the premises, and that he may be thereby deprived of his lien," etc.   C. P. 287.

. But these provisions are restricted to the issuance of the two conservatory writs mentioned, and do not apply to the main demand for the debt of the defendant.   Clearly, it is contemplated by these articles that the fact must be set out affirmatively that the debt declared upon is *not due* at time of filing of the suit, accompanied by the formal and specific allegation of the other facts mentioned therein as rendering the process necessary antecedent to the maturity of debt.   These provisions are exceptional, and to be strictly construed, and not to be extended to any other cases not covered by them.

There is no corresponding provision of the code applicable, in terms, to the issuance of a writ of sequestration *prior to the maturity of the debt* sued upon; though this court has so interpreted paragraph 6 of Article 275 of the code, as to warrant its issuance prior to the maturity of the debt, in an *exceptional* class of cases, not including the instant case.

The language of this paragraph is as follows, viz. :

"'A creditor by special mortgage shall have the power of sequestering *mortgaged* property when he apprehends that it will be *removed out of the State before he can have the benefit of his mortgage, and will make oath of the facts which induced his apprehension.*" (Our italics.)

In Neilson vs. Pool, 17 La. 209, this interpretation was placed upon the provisions of that article. The note sued on in that case became due on the 1st of December, 1839, and suit was commenced on the 3d of September preceding—plaintiff alleging that his debt was not then due, and that same was secured by a *mortgage and privilege* on the defendant's crop, which he verily feared and believed it was his intention to "remove beyond the jurisdiction of the court, and out of the State before his debt becomes due, and deprive him of the only security he has for the payment of his debt."

And his prayer was that the crop be sequestered, and that he have judgment for the amount of his note. when same fell due, recognizing his mortgage and privilege.

·The court states that "on 1st of February, 1840, a supplemental petition was filed setting forth the *same facts* and containing the *same allegations*, except as to the sequestration, which had been already obtained, praying for *judgment on the note* with a privilege or lien on the crop," etc.

On these averments a judgment by default was taken, upon the original and amended petitions, and subsequently the defendant filed an answer, one averment of which was to the effect that the suit was premature and the sequestration without cause.

But these defences did not prevail, and judgment went against the defendant on his note and mortgage, recognizing and enforcing the plaintiff's lien on the crops sequestered.

In the instant case no mortgage is alleged, and neither the plaintiff's petition nor affidavit contains any averment that the defendant's intention was to remove the property on which he claims a privilege "out of the State before his debt became due."

The case of Gardner vs. Shipley, 4 An. 184, was predicated upon allegations quite similar to those quoted from Neilson vs. Pool, and thereto a similar exception of prematurity was urged and with like results; and the court in its opinion said:

"The argument presented by the opposite party is that the debt being unmatured could not be sued for, and the right to a sequestration, being a mere accessory right, must follow the fate of the principal demand. *The text of the law does not require, in terms, that the debt secured by the mortgage or privilege should have matured; (but) certainly its spirit is conservative, and, in our opinion,* embraces the present case"—citing with approval the case of Neilson vs. Pool.

But it is necessary in order to sustain a writ of sequestration under the cited article of the code, that its requirements be rigidly and closely pursued; for it was held in Clark vs. Glover, 14 La. 266, that an affidavit stating that the plaintiff "fears (that) the defendant may remove the mortgaged stock out of the jurisdiction of the State" is insufficient to obtain an order of sequestration; that it "should state *the facts which induce his apprehension.*"

In that case the property sequestered was a slave, and "the alleged ground for obtaining this order was their apprehension that the slave would be removed out of the State," and the sequestration was dissolved because of the insufficiency of the affidavit.

The court adhered to the doctrine of the above cited cases and quoted them approvingly in Bres, Executor, vs. Booth, 1 An. 307, and held that "to entitle a plaintiff to sequester *mortgaged* property, on the ground of his apprehension that it will be removed out of the State before he can have the benefit of his mortgage, he *must make oath to the facts which induce his apprehension.* It is not sufficient to swear that he apprehends the removal." C. P. 275, paragraph 6.

It is evident, that while maintaining writs of sequestration issued under the provisions of that *particular paragraph,* prior to the maturity of the debt, for the reason that such is believed by the court to be the *spirit* of the law, it intended to require of litigants the strictest adherence to the requirements thereof in procuring same, and not to extend that relief to any other class of cases arising under other provisions of that article. Because the court was evidently not unmindful of the safe and conservative rule that has constantly been adhered to, that a sequestration can only issue when a party is clearly entitled to it, and it is expressly allowed. That it is a harsh remedy and not to be extended by implication to cases not contemplated by law. 4 R. 462; 2 An. 961; 6 An. 444; 9 An. 535; 2 An. 826; 4 An. 452; 37 An. 552, Pasley vs. McConnell.

The rule announced in the foregoing cases was again recognized in Catlett vs. Heffner, 23 An. 578, in which the court held that a *sequestration* may issue in accordance "with Article 275, C. P., but the *suit* can not be instituted before the maturity of the obligation."

In that case suit was filed on the 26th of November, 1868, to enforce the collection of a note maturing on the 1st of January follow-

ing. The petition alleged the existence of a *mortgage* to secure the debt, and the prayer of the petition demanded the issuance of a sequestration at date of filing suit, and an *absolute* judgment for the amount of the debt. To this petition the defendant tendered the exception of prematurity, and moved to dissolve the writ of sequestration; but same were overruled.

This court was of opinion that the plea of prematurity should have been sustained, and the court said:

" Because the plaintiff, under the state of facts contemplated by Article 275, C. P., may sequester the mortgaged property to prevent its removal from the State ' before he can have the benefit of his mortgage,' whether the same be due or not due, does not give him greater rights than the mortgage gave, or the debtors have consented he should have, as to the time at which he may enforce payment."

A like opinion was entertained in Duncan vs. Wise, 39 An. 74.

An attentive examination of adjudicated cases has not enabled us to discover one in which a writ of sequestration was permitted to stand, when issued *prior to the maturity of the debt*, in any other class of cases than the one mentioned in the cases cited, and then only on compliance with the requirements pointed out in the statute. It is evident that the plaintiff has not brought his case within those requirements, the averments of his petition not definitely fixing the date his debt went to maturity, though his prayer is for an absolute, unconditional judgment; there is no allegation that his debt was secured by mortgage, or that he apprehended that the property on which he has a privilege was about to be removed out of the State during the pendency of the suit.

The case of Warfield vs. Oliver, 23 An. 612, is relied upon as sustaining the proposition that the filing of a supplemental petition is the real commencement of the suit, and relates back to date of filing the original suit, and will maintain a writ of sequestration *in statu quo*, notwithstanding the original petition be dismissed on an exception to it as premature.

That case is not, however, in point, because the suit was brought upon a series of notes for rent, a part of which were due and a part not due; and defendant's exception was directed at those not due, and same was only to that extent sustained. Consequently, the writ was not dissolved as to the notes that were already due at time suit

31*

was filed. But in the instant case suit was brought on a single note, which was not due, although absolute judgment is demanded on it. This allegation and accompanying prayer rendered defendant's exception necessary, and caused the dismissal of the suit *in its entirety*.

That such is the fate of a suit prematurely filed is attested by the opinion of our predecessors in Merz vs. Judge, 31 An. 120.

The case of Catlett vs. Heffner, 23 An. 577, is somewhat similar to the Warfield case, though instituted upon a single note not due, and secured by a *special mortgage*—thus relegating it to the exceptional class above mentioned. In that case the exception of prematurity was sustained, the suit dismissed and the sequestration dissolved.

In the case of Barrier & Bro. vs. Fiste, 9 An. 535, a sequestration was obtained of goods on which the plaintiffs claimed a vendor's lien—but no mortgage—the suit being founded on two notes thereafter to become due. To this suit and sequestration the defendant excepted, "on the ground that no case had been made by the pleadings and affidavits to authorize such remedy, and they also excepted on the ground of its prematurity."

The exceptions were sustained, the suit dismissed and the sequestration dissolved. On appeal to this court the judgment of the District Court was affirmed—the court simply stating that "the District Court took a correct view of all the questions raised by the appellants."

That case is exactly in point. Like the instant one it was brought on notes not due and secured by a vendor's lien. Upon the defendant's exception of prematurity the suit was dismissed and the sequestration dissolved.

This is the same exception and relief that is demanded on the part of the defendant. The two cases—that of Barrier and the instant one—are exactly parallel.

After diligent search we have been unable to find any decision of this court wherein that case has been overruled or a contrary doctrine maintained.

But while there seems to be no escape from the conclusion that the defendant's exception was well taken and should, in keeping with our jurisprudence, have been maintained *in toto*, yet, without pledging this court unalterably to this view, we are of opinion that we may safely place our decision upon a different footing, equally as fatal to the plaintiff's sequestration.

It is that the plaintiff made no oath to his supplemental petition, procured no additional order and obtained no new writ of sequestration. ,

On the authority of 'Lehman vs. Truxillo, 32 An. 65, an affidavit accompanying a supplemental petition is a *sine qua non* to the maintenance of a writ of sequestration issued under the original petition, and for the preservation of the *status quo* after the dismissal of the original petition. For " the supplemental petition," say the court, "set up the new and important fact that some four hundred dollars more were due plaintiff than the amount claimed in the original petition. These petitions should, therefore, have been sworn to, and new orders and new writs granted under them."

Inasmuch as no affidavit was made to the supplemental petition the sequestration was dissolved.

The same view was entertained and enforced in Gumble vs. Beer,. 36 An. 487—a case of sequestration in the enforcement of a vendor's lien securing a debt past due. In the last case there was an affidavit accompanying the supplemental petition, but *no new order* was obtained, and the court held that it was unavailing and superfluous.

In the instant case the supplemental petition simply alleges the fact of the debt sued upon having reached maturity since the suit was filed, entitling plaintiff to judgment. This averment was of far greater importance to the plaintiff than that of the supplemental petition in the Lehman case, claiming only an *additional* sum of four hundred dollars. But it was not accompanied by any new or additional affidavit, order or writ, and no averment is made of the *continued* existence of the causes for which the original writ was issued.

Considering the well-grounded and ancient rule of our jurisprudence, that sequestration is a harsh remedy and must be construed and determined by the condition of things existing at date of issuance, the conviction is clear that the writ issued in the instant case must be dissolved at plaintiff's cost, for the reason that the plaintiff has failed to observe some of the essential requisites for its maintenance.

## II.

But, in any event, we regard the defendant's exception to the supplemental petition good, same being that it changed the *substance* of his original demand by alleging that the note sued on had *become*

*due since* the institution of the suit, whereas the demand of his original suit was predicated upon an obligation as already due, and upon which demand prayer was made for an unconditional judgment.

In Bank vs. Moss, 41 An. 232, a case of attachment on a debt not due is presented, and to which the defendant tendered an exception of prematurity.

Pending the trial of the exception, the plaintiff tendered and caused to be filed a supplemental petition setting out the fact, as alleged in the supplemental petition in the instant case, of the debt having become due since the suit was filed.

Of this suit and exception the court say:

" The motion to dissolve was filed on the 8th of November, 1887, and plaintiff's right to its attachment was therefore at issue when the amended petition was filed. It thence follows that it can not be considered if it contains any substantial averment on the issue of the attachment which was not to be found in the original petition.

" By reference to the latter it will appear that neither of the drafts had matured at the date of attachment, or of the filing of the petition, while in the amended petition it is distinctly alleged that all four of the drafts had matured.   *   *   *

" The state of things thus disclosed is as widely different from the position contained in the original pleadings as light differs from darkness.

" In other words, everything which, under law and jurisprudence, was lacking to justify the proceedings by attachment in the *original* pleadings is supplied by the lapse of time and by the happening of subsequent events, through the proposed *amended* petition.   *   *   *

" From the very nature of things the events and proceedings therein described would not have a retroactive effect, so as to make it appear, on the 23d of September, that maturities to occur in October and November and December following had already taken place.

" To argue against the allowance of such amended pleadings, under the restricted issue to be herein discussed, is, after all, labor to prove a self-evident proposition.   Hart vs. Bowie, 34 An. 325."

On the theory of that opinion, there can be no doubt of the supplemental petition in the instant case changing the *substance* of the demand in the original petition, for the stronger reason that the debt is alleged to be *due* in the *original* petition and absolute judg-

ment is prayed for, while in the supplemental petition the allegation is made that the debt *became due since the filing of the suit*—the two substantial and necessary allegations being in conflict.

Hence the defendant's exception to the supplemental petition was well grounded, and should have been sustained.

A very careful consideration of this case in all of its bearings has led us to the following conclusions, viz.:

First, that it is more than doubtful whether, in this class of cases, a sequestration is at all permissible antecedent to the maturity of the debt.

Second, that, conceding *arguendo* that the dismissal of an original petition does not *necessarily* dissolve the sequestration, and that the *status quo* of a seizure under it may be saved by a supplemental petition subsequently filed, yet, in order that same may be rendered efficacious, it *must* be sworn to.

Third, that in case the *original* suit and sequestration have proceeded on the theory that the debt is due at time of filing, a *supplemental* petition alleging the new and substantial fact that the debt has *become due since the suit was filed* changes the substance of the original demand in an important particular.

Being satisfied of these propositions, the plaintiff's sequestration can not stand; the supplemental petition must be dismissed.

It is therefore ordered and decreed that the judgment appealed from be reversed, and it is further ordered that the plaintiff's suit and sequestration be dismissed at his costs in both courts.

Rehearing refused.