(50 South. 8.)

No. 17,427.

ROBERT GAIR CO. v. COLUMBIA RICE PACKING CO., Limited, et al.

(June 15, 1909.)

1. CORPORATIONS (§ 432*)—CONTRACTS—EXECUTION—EVIDENCE.

Evidence *held* to show that the guaranty of a corporation given by its secretary was given with the knowledge and acquiescence of the president and directors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 432.*]

124 LA.—7

2. CORPORATIONS (§ 432*) — OFFICERS — POWERS.

The authority of a subordinate agent of a corporation may be established by proof of the usage which the corporation had permitted to grow up with the acquiescence of the board of directors charged with the duty of supervising and controlling the business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1727; Dec. Dig. § 432.*]

3. CORPORATIONS (§ 399*) — OFFICERS—POWERS.

Persons dealing with the president of a corporation in the usual manner and within the scope of the powers which the president had been accustomed to exercise with the assent of the directors, though in ultra vires of the corporation, may assume that he had been actually invested with such powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1588; Dec. Dig. § 399.*]

4. CORPORATIONS (§ 370*)—POWERS.

A corporation possesses only those powers which its charter confers on it either expressly or by implication.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1515; Dec. Dig. § 370.*]

5. CORPORATIONS (§ 487*)—CONTRACTS—ULTRA VIRES—VALIDITY.

Contracts made by a corporation beyond the scope of its express or implied powers are void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

6. CORPORATIONS (§ 416*) — IMPLIED POWERS—GUARANTEEING CONTRACTS.

A corporation was formed to establish, erect, and operate a rice mill, and, in connection therewith, to buy and sell real estate, live stock, and commodities that such corporations are authorized to deal in under the statute, and with authority to make contracts and possess the powers and privileges that corporations may lawfully possess. All its stockholders were stockholders in another corporation, formed to carry on the business of packing rice, buying rice from the mill company and others. The packing company was an independent venture. It was not shown whether its stock was held exclusively by the stockholders of the mill company. The secretary of the mill company was the vice president of the packing company. *Held*, that the mill company had no implied power to guarantee the contracts of the latter.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1623–1625; Dec. Dig. § 416.*]

7. CORPORATIONS (§ 370*)—POWERS—"IMPLIED POWERS"—"INCIDENTAL POWERS."

Implied powers of corporations presumptively exist only to the extent that may be necessary to enable them to carry out the ex-

press powers granted and to accomplish the purpose of their creation, and an incidental power may be defined to be one that may be immediately appropriate to the execution of the specific power granted, and not one that has some slight or remote relation to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1515; Dec. Dig. § 370.*

For other definitions, see Words and Phrases, vol. 4, pp. 3435, 3495, 3496.]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Philip Sidney Pugh, Judge.

Action by the Robert Gair Company against the Columbia Rice Packing Company, Limited, and another. There was a judgment for plaintiff against the defendant the Columbia Rice Packing Company, and in favor of co-defendant the Crowley Rice Milling Company, and plaintiff appeals. Affirmed.

Dart &, Kernan, for appellant. Chappuis & Holt, for appellee Crowley Rice Milling Co., Ltd.

PROVOSTY, J. The Robert Gair Company, plaintiff in this suit, of Brooklyn, N. Y., manufacturers of paper boxes, and the Columbia Rice Packing Company, of Crowley, in this state, entered into a contract by which the former was to manufacture and ship to the latter 1,400,000 cartoons for packing rice; and this suit is for a balance of $6,740.85, alleged to be due under this contract. Plaintiff has made the Crowley Rice Milling Company, also of Crowley, in this state, a party defendant, alleging that it guaranteed the performance of the contract by its codefendant. The two defendant companies will be designated hereinafter respectively, as the packing company and the milling company. Judgment went in the lower court against the packing company, but in favor of the milling company, and plaintiff alone has appealed; so that the packing company is not a party to this appeal.

The guaranty in question was signed for the milling company by its secretary, John Green. The milling company denies that its said secretary had any authority to bind it in the matter, and avers that the giving of such a guaranty is outside of and beyond its own powers as a corporation.

While the contract was in course of negotiation, Green, who, besides being secretary of the milling company, was one of the directors of the packing company, wrote twice to the plaintiff company, in the name of the milling company, with reference to the proposed contract. In the first of these letters he said:

"We have your price and proposition which we are giving careful attention and will have our attention as soon as we get the hand-painted designs from you."

In the second of these letters he said:

"We have your favor of the 27th and note you have not yet mailed us designs of the cartoons for which we are anxious in order to get our order placed so that we will be able to get the goods in time to be used about the middle of September. From what Mr. Guild states, we anticipated having the designs some two weeks ago. We hope when received they will meet our approval so there will be no further delay."

From these letters and from plaintiff's answer to the second, one would suppose that the proposed contract was to be with the milling company itself instead of with the packing company.

Before the plaintiff company would close the contract, it required that security should be given; and thereupon Green gave, in the name of the milling company, the guaranty sued on.

By the charter of the milling company all the powers of the corporation are vested in the board of directors; but the president and the secretary, acting jointly, are authorized to make contracts "in the regular transaction of its business." In practice, Green alone attended to the business, and by general repute, and according to his own testimony given in a suit brought by the company, was manager. He says, however, that except in this business with the plaintiff company he always acted

under the supervision of the board of directors, and never entered into any contracts, outside of routine business, without first obtaining their authorization; and there is nothing in the record expressly to the contrary. He says that the board of directors knew nothing of this guaranty given to the plaintiff, nor of a correspondence based upon it carried on by plaintiff with the milling company, beginning in the latter part of November, when the packing company began to be slow in sending in its orders for the cartoons, and lasting several months, in which plaintiff was calling upon the milling company, as guarantor, to urge the packing company to greater diligence.

If it be true that the directors of the milling company had no knowledge of this guaranty or of this correspondence, such absence of knowledge could not have been the result of accident; for this guaranty was an important contract, involving eight to nine thousand dollars—the largest this milling company had ever entered into, excepting that for the erection of its plant. The president of the milling company was constantly in the office. The directors must have been there frequently, for Green says that in all he did he acted under their supervision, except in the one instance of this guaranty. There were two regular meetings of the board of directors each year, and special meetings as occasion required. There was a standing committee whose duty it was to "examine into the condition of the corporation at any time they selected, but not less than once every quarter." It is incredible that these directors should not have known and approved of this guaranty, unless Green studiously and fraudulently kept all knowledge of it from them, and this he denies that he did—simply "overlooked" it, he says. Green was not more largely interested in the packing company than were his fellow officers of the milling company, the president and the directors.

There was every reason why he should have communicated with them on the subject, and none why he should have abstained from so doing. He alone testifies; they do not. We conclude that this guaranty was given with the knowledge and consent of the president and directors of the milling company, and that this consent was given with as much observance of formality as was customary in the transaction of the business of the company.

"The authority of the subordinate agent of a corporation often depends upon the course of dealings which the company or its directors have sanctioned. It may be established some time without reference to official record of the proceedings of the board, by proof of the usage which the company had permitted to grow up in the business, and of the acquiescence of the board charged with the duty of supervising and controlling the company's business. Parties dealing with the president of a corporation in the usual manner, and within the scope of the powers which the president had been accustomed to exercise with the assent of the directors, and not ultra vires of the corporation, would be entitled to assume that he had been actually invested with those powers." Berlin v. P. L. Cusachs, 114 La. 744, 38 South. 539; Blanc v. Germania Nat. Bank, 114 La. 739, 38 South. 537.

The other defense, that of ultra vires, must however, be sustained. It is elementary that a corporation possesses only those powers which its charter confers upon it either expressly or by implication. Or, as more fully stated in the case of Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 48, 11 Sup. Ct. 478, 35 L. Ed. 64:

"The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: The obligation of every one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders; not to be subject to risks they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law."

The powers of the corporation are defined in the charter, as follows:

"The object and purposes for which this corporation is formed are the establishment and erection of a modern rice mill with all proper and requisite machinery, fixtures and appurtenances thereof, at said town of Crowley in said parish of Acadia, in this state, and the maintenance, conducting and operation there of a general milling, storing, manufacturing and commercial business in connection therewith to buy and sell real estate, live stock and all articles and commodities that such corporations are authorized to deal in under the statutes of the state."

There is nothing here that would authorize the company to guarantee, gratuitously or otherwise, the contract of a third person. But the learned counsel for plaintiff contend that such authority is to be found in article 1 of the charter, which declares what the name and duration of the corporation shall be, and adds that it—

"shall have authority to sue and to be sued, may acquire and hold real estate and personal property and receive and convey title thereto; may make contracts and generally shall possess all the powers and privileges that corporations are or may be lawfully authorized to possess within this state."

We think the powers of the corporation are determined by the clause which defines its objects and purpose, and not by this general clause, which, when read in connection with the clause defining the object and purpose of the organization of the corporation, simply means that, for carrying out the said object and purpose, the corporation shall have all the powers that corporations usually have. The power or authority to conduct a rice milling business certainly does not expressly include the power or authority to guarantee the contracts of an independent corporation. Does it include it impliedly, or as fairly incidental?

The learned counsel for the plaintiff argues that it does; that the giving of this guaranty was in line with the business of the milling company, and directly and immediately appropriate to the execution of the specific powers granted by the charter, because the packing company was nothing more than an instrumentality created and made use of by the several rice mills of Crowley, of which the milling company was one, for creating a market for their rice by putting it up in more attractive and salable packages. Counsel assimilate the situation to that where a brewing company, in order to create or maintain a market for its beer, installs a saloon or hotel keeper in certain premises, and guarantees the payment of the rent of the premises. 7 Thompson, Corp. 837; 29 A. & E. E. 47.

There can be no denial that the two companies were not entire strangers to each other; all the stockholders of the milling company were stockholders in the packing company, and Green was the vice president of the packing company. But pretty much the same relation existed between the packing company and all the other rice milling companies of Crowley, and the evidence shows that this packing company was an independent venture, which was to buy its rice not specially from any particular rice mill or mills, but wherever it could get it most advantageously; and that while a great many, or most, of the stockholders of the several milling companies were interested in it, the corporations themselves, as corporations, had nothing to do with it. The record does not show whether or not the stock of the packing company was held exclusively by the stockholders of rice milling companies. Under these circumstances, we do not think that the packing company was a mere instrumentality in the carrying on of the business of the milling company; and, hence, we do not think that the power to sign this guaranty can be said to have been fairly incidental to the power expressly granted by the charter. The law upon this point is stated in the case of State v. Newman, 51 La. Ann.

837, 25 South. 410, 72 Am. St. Rep. 476, as follows:

"Implied powers, in corporations, are presumed to exist only to the extent that may be necessary to enable such bodies to carry out the express powers granted, and to accomplish the purpose of their creation; and an incidental power may be defined to be one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it."

We quote from the Supreme Court of Texas, as follows:

"It is not easy to lay down a rule by which the question may be determined; but the following, as announced by a well-known textwriter, commends itself not only as being reasonable in itself, but also as being in accord with the great weight of authority: 'Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this. It may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have, however, determined that such means shall be direct, not indirect; i. e., that a company shall not enter into engagements, as the rendering of assistance to other undertakings from which it anticipates a benefit to itself, not immediately, but mediately by reaction, as it were, from the success of the operations thus encouraged—all such proceedings inevitably tending to breaches of duty on part of the directors; to abandonment of its peculiar object on part of the corporation.' Green's Brice's Ultra Vires, 88.

"In short, if the means be such as are usually resorted to and a direct method of accomplishing the purpose of the corporation, they are within its powers; if they be unusual, and tend in an indirect manner only to promote its interests, they are held to be ultra vires. Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 782.

"The test is not whether the particular enterprise or undertaking would be to the benefit of the corporation guaranteeing the contract, but whether the exercise of such authority, in view of the circumstances, is reasonably necessary to the proper conduct of its legitimate business."

In the present connection, the following cases may be read with interest.

In Davis v. Old Colony Railroad Co., 131 Mass. 258, 41 Am. Rep. 221, it was held beyond the power of a railroad corporation and a corporation engaged in the manufacture and sale of musical instruments to guarantee the expenses of a musical jubilee and festival, though made with reasonable belief that the holding of such festival would be of great pecuniary advantage to such corporation by increasing their proper business, and though the festival had been held and the expenses incurred in reliance upon the guaranty.

In West Maryland Railroad Co. v. Blue Ridge Hotel Co., 102 Md. 307, 62 Atl. 351, 2 L. R. A. (N. S.) 892, 111 Am. St. Rep. 362, a contract by a railroad company guaranteeing the payment of dividends on stock and interest on bonds of a hotel company on the lines of its road was held ultra vires and void, though it expected that the construction and operation of such hotel would greatly increase the receipts of the railroad company.

To the same effect are the following cases: Germania Safety Vault Co. v. Boynton, 71 Fed. 797, 19 C. C. A. 118; Humbolt Min. Co. v. American Mfg., etc., Co., 62 Fed. 356, 10 C. C. A. 415; Best Brewing Co. v. Klassen, 185 Ill. 37, 57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26; Penn. R. R. Co. v. St. Louis, etc., R. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83; Memphis Grain, etc., El. Co. v. Memphis, etc., R. Co., 85 Tenn. 703, 5 S. W. 52, 4 Am. St. Rep. 798.

Judgment affirmed.