OVERTON, J.
 

 The present suit is one in which Scharfenstein & Sons, Inc., a corporation engaged in the coal business, which will be hereafter referred to as the coal company, sues the Item Company, Limited, a corporation engaged in the newspaper business, which will hereafter be referred to as the Item, to recover $3,310.75, alleged to be due for coal sold and delivered to the latter company.
 

 The Item answered the suit and filed a re-conventional demand, in which it urges that it is entitled to recover from plaintiff the sum of $4,799.25 fox advertising published fox the coal company and also for Scharfenstein Motors, Inc., a corporation engaged in the sale of automobiles, which will be hereafter referred to as the motors company.
 

 This defense rests on an alleged understanding between the Item and the coal company. By the terms of this alleged agreement the Item was to publish advertisements for both companies, and to be paid by purchasing coal from the coal company.
 

 Both parties filed the plea of prescription of three years, which, if pertinent, results in barring all items antedating February 8, 1926, on both accounts. It is unnecessary, however, to determine the applicability of these pleas, for both sides concede that all items, without reference to compensation, on each account, antedating the date named, are prescribed, and the case has been tried and
 
 *797
 
 decided below on the strength of these concessions.
 

 The trial court found that the unprescribed portion of the coal company’s claim was $1,-270.75 and of the Item’s $2,103.13, and that, fox the difference, which amounts to $832.40, the Item was entitled to judgment.
 

 We think that the 'record clearly establishes the understanding between the coal company and the Item to the effect that the latter bound itself to publish for the coal company and for the motors company advertisements in consideration of coal to be purchased by it from the coal company.
 

 The coal company, however, urges that it is an independent corporation, distinct from the motors company,; that the evidence offered to establish that it is liable for the indebtedness of the motors company is parol evidence; that parol evidence is inadmissible to establish a promise to pay the debt of a third person; that, if the indebtedness, so far as relates to the motors company, be not considered to be the indebtedness of a third person, nevertheless the coal company is not liable for it, because no one, acting for it, was authorized to enter into the contract, and because the contract was ultra vires of the corporation itself, and lastly, if the coal company be held liable, the indebtedness, by the terms of the contract, is payable in trade and not in money.
 

 The contract does not involve a promise to pay the debt of a third person. The obligation of the coal company was an original obligation by which it contracted to give the Item coal in payment of the advertising to be published for both corporations. The contract related to the advertising, to be publi-shed, as a whole. The contract is indivisible.
 

 The defense that the officer acting fox the coal company was not authorized to do so cannot be sustained. The stockholders of both the coal company and the motors company were the same. The members of the two boards of directors consisted of the same persons. The contract was entered into for the two companies by Fred Scharfenstein, who was president of both companies, and at times acted as manager of both. He was in charge of the advertising for the two companies. It does not appear, it is true, that he was authorized to enter into the contract by resolutions of the boards of directors of the two corporations, but the record leaves no doubt that the members of the two boards and the stockholders of both corporations, who consisted of members of the Scharfenstein family, had knowledge of the contract, which continued in force for several years, and that no question was raised concerning the validity of the contract during the long period in which the two corporations were receiving the benefits flowing from it.
 

 “It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may mot, any more than an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. Cusachs, Ltd., 114 La. 744, 38 So. 539; Gair Co. v. Columbia Rice Packing Co., 124 La. 194, 50 So. 8; Boudreaux v. Feibleman, 105 La. 404, 29 So. 881. A course of conduct pursued by a corporation for many years, in permitting an
 
 *799
 
 officer to do an unauthorized act, is an acquiescence in such act and creates an estoppel.” Gueydan v. T. P. Ranch Co., 156 La. 398, 100 So. 541, 543. See, also, Mayville Canal Co. v. Lake Arthur Rice Milling Co., 119 La. 447, 44 So. 260.
 

 Granting that the contract was, when entered into, ultra vires of the coal company, and it may have been, nevertheless it was not immoral, nor positively prohibited by law, nor contrary to the rules of public .policy.
 

 “Where the contract complained of as ultra vires is not immoral nor a violation of the rules of public policy nor positively prohibited by the law or the constitution of the jurisdiction but is merely beyond the powers of the corporation in a sense which merely concerns the stockholders, the contract will not ordinarily be rescinded at the instance of the corporation as being ultra vires after the parties have acquiesced therein for a long time and large expenditures have been incurred and improvements made, upon the faith thereof and particularly where the corporation has received commensurate benefits and has been relieved from burdensome obligations. The rule is a wholesome one that requires the court, in case of merely voidable contracts, to withhold relief from those who, with knowledge of the facts, or with full opportunity to ascertain the facts, unreasonably postpone application for relief.” Thompson on Corporations (3d Ed.) vol. 4, § 2892, pp. 589, 599.
 

 The foregoing accords with the ruling of this court in the case of City Sav. Bank & Trust Co. v. Shreveport Brick Co., 172 La. 471, 134 So. 397, 398, where it was said:
 

 “Even if it be conceded that the transactions with the bank were ultra vires on the part of the brick company, nevertheless, they were fully completed, the sole stockholders and directors acquiescing therein, and the law will leave the parties where it finds them.” See, also, Cook v. Ruston Oil Mills & Fertilizer Co., 170 La. 10, 127 So. 347.
 

 The record in the present case, as we have said, fully justifies the conclusion that the stockholders and the directors acquiesced in the contract, and since the contract is not contrary to public policy, nor immoral, nor contrary to positive law, it should not be disturbed now, after it is a completed transaction, and all parties have received the benefits to be derived therefrom, and since it does not appear to affect the rights of creditors injuriously.
 

 We have examin'ed the authorities cited by the coal company, including the case of Robert Gair Co. v. Columbia Rice Packing Co., 124 La. 193, 50 So. 8, but do not find them in conflict with the views here expressed. The facts in the cited case are different from those in the present case. The record in that case did not show that the stock of the Columbia Rice Packing Company was held exclusively by the Crowley Rice Milling Company, also a defendant in the case, and the court found that very much the same relation existed between the packing company and all other rice milling companies of Crowley, as relates to the holding of stock. It therefore declined to hold, which was the contention there, that the packing company was a mere .instrumentality of the Crowley Rice Milling Company. The case is not pertinent.
 

 
 *801
 
 The Item, we think, is not bound to accept such balance as may be due it in coal. The theory of the contract, so far as we are able to gather, seems to have been that, so long as it continued, what became due for advertising should be offset by what became due for coal. The contract had no fixed term. There was no limit to either side’s right to order by confining the right to amounts sufficient to offset what the other side might order. The parties evidently contemplated that, when the contract was brought to an end, one or the other would owe a balance, and that such balance should be payable in money. It did come to an end by the Item’s conclusion to use natural gas. The contract was apparently regarded by the coal company as is here interpreted, for, when that company brought the present suit, it sued for a moneyed judgment, and ■nothing else. We think that the Item is entitled to a moneyed judgment for the balance due it.
 

 Our conclusion is that the coal company is liable for the advertising of both companies, which, in fact, were companies organized and conducted by members of the Scharfenstein family and primarily for their benefit. The advertising published for the coal company after February 8, 1926, amounted to $1,150.-47, and that published for the motors company after that daté amounted to $952.68, making a total of $2,103.15. The coal sold the Item, granting that the entire account is correct, as seems to have been considered by the trial court, amounted, after the date mentioned, to $1,270.75. Deducting the amount due the coal company from that due the Item leaves $832.40 in favor of the Item, the amount of the judgment rendered below.
 

 The Item, in its answer to the appeal, complains that this amount is $23.25 less than it should be. This complaint rests upon the ground that the Item, in admitting the amount due by it, expressly excluded the last two items of the coal company’s account, and that the coal company'offered no evidence in support of the two items. The record shows that these two items were excluded from the admission by the Item, and our review of the record fails to show that they 'have been established, or that any further attention was paid to them. It looks as if the trial court overlooked them. Plaintiff should have proved these items, and, having failed to do so, is not entitled to credit for. them. Therefore the judgment rendered will have to be amended by increasing it $23.25.
 

 The judgment appealed from is amended by increasing it from $832.40 to $855.65, and, aSi thus amended, it is affirmed.
 

 O’NIELD, O. J., absent.
 

 KOODkS, <j., tiuvv» no part.