HIGGINS, Justice.
 

 This is a suit by the payee and holder of two certain promissory notes, one for the sum
 
 *82
 
 of $2,864.58, dated December 29, 1928, payable on or before December 1, 1929, and the other for the sum of $1,116.99, dated January
 
 7,
 
 1930, payable on or before September 1, 1930. against the defendant corporation as accommodation indorser of the notes, the indorsements having been made by its president and manager.
 

 The defenses were: (1) That the indorsements were neither expressly nor impliedly authorized and no benefit or advantage was derived by the corporation from them; and (2) that the acts of the president and manager, in indorsing the notes, were ultra vires, because the indorsements were for accommodation only and not a proper part of, or incidental to, the business conducted by the defendant corporation.
 

 The district court rendered judgment in favor of the defendant, dismissing the suit. Plaintiff has appealed.
 

 Mr. E. B. Proctor was the manager of the Cotton Insurance Association, an organization composed of thirty-three large fire insurance companies which wrote blanket fire insurance policies on baled cotton, with headquarters at Atlanta, Ga. The National Eire Insurance Company of Hartford, Conn., was a member of the association. Local agencies were designated to represent the association in securing policyholders, but the policies were issued direct from the Atlanta office to the insured, who was required to make daily reports, on blanks furnished by the association, of the number of bales of cotton for which coverage was requested and the respective places where they were located. The premiums on these policies were payable monthly, and each month the association sent to the local agencies duplicate bills for the purpose of collecting the premiums. The local agency received a commission of 10 per cent, of the amount of the premium collected, and remitted the remainder to the home office of the association at Atlanta.
 

 The defendant, Opelousas Insurance Agency, Inc., was also the local agency for the National Eire Insurance Company and other fire insurance companies, having authority to write and issue ordinary fire insurance policies and to collect premiums therefor, for which it'received a commission of 20 per cent.
 

 ■ Mr. Armand L. Dejean was a client of the defendant corporation since 1917 and had transacted a large amount of insurance business with it, including both ordinary fire and blanket coverage policies.
 

 The board of directors of the defendant corporation authorized the president and manager to make the necessary loans from the local bank in behalf of the corporation, for the purpose of operating its business. lie was also authorized to discount clients’ notes which were given for the purpose of paying premiums of ordinary fire insurance policies.
 

 In the instant case the blanket policies of the National Eire Insurance Company were written for Mr. Dejean through the defendant corporation, for the cotton seasons of 1928-1929 and 1929-1930. The two notes sued upon represented the unpaid part of the premiums for those two seasons, the notes being executed by Dejean to plaintiff’s order and indorsed by defendant. At the time this was done, it appears that Dejean, who had formerly been in a prosperous condition, was in desperately serious financial straits. He had failed to
 
 *84
 
 pay his monthly premiums and had not been pressed for payment by the president of the defendant corporation, because he felt that Dejean’s cotton ventures would prove profitable.
 

 Upon the Atlanta office exacting a report as to the status of Dejean’s account, and receiving an unfavorable answer, the assoeia-' tion’s special representative was sent to Opelousas for the purpose of having the account guaranteed by some responsible person. The local bank, which had financed Dejean’s cotton venture, refused to indorse Dejean’s notes, or to guarantee his account, and the president of the defendant corporation, after sending the note back to Atlanta, finally indorsed the first note representing the accrued unpaid premiums and guaranteed the premiums for the remaining months of the policy. The second note was given under practically identical circumstances. Defendant corporation paid the amounts guaranteed, but not the two notes in question, and refused to indorse any more notes or further guarantee Dejean’s account.
 

 Dejean’s ventures proved a failure, and he was adjudicated a bankrupt.
 

 It is conceded that there was neither a resolution of the board of directors or stockholders, nor any provision in the charter of the corporation, which expressly or impliedly authorized the president and manager to sign its name as accommodation indorser for any of its clients. Did the president and manager have the implied or apparent authority to bind the corporation by signing as an accommodation indorser? In Corpus Juris, vol. 14A, p. 349, § 2212 (3), we find:
 

 “Although an officer or agent acts without, or in excess of, his actual authority, if he acts within the scope of an apparent authority, with which the corporation has clothed him by holding him out or permitting him to appear, as having such authority, the corporation is bound thereby in favor of a person who deals with him in good faith in reliance on such apparent authority, as where an officer is
 
 allowed to exercise
 
 a particular authority in respect to the business of the corporation, or a particular branch of it,
 
 continuously and publicly, for a considerable time. *
 
 * * ” (Italics ours.)
 

 Corpus Juris, vol. 14A, p. 404, § 2254, reads as follows:
 

 “As a general rule the agency and authority of an officer or agent may be proved by evidence of his having previously exercised certain powers as officer or agent with the approval or recognition of the corporation, and this rule applies to evidence as to the authority of the president to do a particular act or make a particular
 
 contract;
 
 and on the other hand evidence that the officer or agent
 
 had never performed similar acts
 
 is admissible to
 
 disprove Ms authority
 
 in the particular instance. But a
 
 special authority
 
 to do a particular act or make a particular contract in a
 
 single instance
 
 or a
 
 few isolated instances
 
 is no ground
 
 for inferring an implied authority
 
 to do other acts or make other contracts, generally of the same kind, with other persons, and evidence thereof is not admissible. * * * ” (Italics ours.)
 

 While the defendant’s officer had authority to accept the notes of clients for premiums due on ordinary fire insurance policies
 
 *86
 
 and to discount them with the local bank, it is admitted by one of the representatives of the plaintiff’s association that the instant transaction was an unusual one and the first one of its kind that he had any knowledge of or experience with. The directors of the defendant corporation did not permit the president and manager of the corporation to hold himself out or to engage in a continuous line of conduct for any appreciable period of time that would tend to lead any one dealing with him to reasonably believe that he had the apparent and implied authority, in furtherance of the corporation’s business, to sign as an accommodation indorser.' The notes in question represent the only instance where this was done. Acts of indorsements and guaranties by officers of corporations are generally held to be ultra vires, unless the corporation is authorized in its charter to obligate itself. The reason for the rule is that this is a dissipation or diversion of the funds of the corporation for a purpose other than that authorized by the charter of the corporation. Louisiana State Bank v. Orleans Navigation Co., 3 La. Ann. 294; 7 R. C. L., verbo “Corporations,” § 596, p. 602.
 

 Counsel for the plaintiff argues that these were not accommodation indorsements because:
 

 “(a) The agency was to receive a 10% commission of the amounts of the two notes.
 

 “(b) The agency was interested in keeping Dejean’s business and endorsed the two notes with a view to its interest in that regard.
 

 “(c) The agency was charged with the duty of collecting the premiums due by Dejean, and, having neglected the performance of its duty, it endorsed the notes in recognition of its liability arising out of its neglect of duty.”
 

 Taking up these points in the above order, We observe that the defendant corporation was entitled to 10 per cent, commission on the premiums Dejean owed, because the defendant secured that business for the plaintiff. The 10 per cent, commission was not to be paid the defendant as a consideration for its officer signing its name as an accommodation indorser, but because of services the corporation had rendered to the plaintiff. In short, at the time that the indorsements were made on the notes, the 10 per cent, commission was due the defendant, subject only to the contingency of collecting the premium from the debtor, Dejean.
 

 ■ While it is true that Dejean had been a valuable client of the defendant corporation, it was obvious to all parties concerned, at tne time of both indorsements, that he was in serious financial diffichlty, if not insolvent. His only hope for recovery was a highly speculative venture which neither the president and manager of the defendant corporation, nor the corporation itself, could lawfully assist him in financing. Defendant corporation was not in business for the purpose of assisting or helping to finance its clients or prospective policyholders by signing as an accommodation indorser, for substantial amounts of money, with the hope of retaining or getting their business, where the only remuneration was the 10 per cent, commission, and that being contingent upon the actual collection of the premium. To carry plaintiff’s contention to its logical conclusion would be to give to every president and manager of a corporation the implied and appar
 
 *88
 
 ent authority to assist in financing the business of its patrons and prospective patrons, by pledging its credit as a gratuity in order to create good will so as to retain or attract business.
 

 The evidence shows that, if the defendant was negligent in not properly collecting the premiums due, the plaintiff was equally at fault. The plaintiff was apprised at all times of the amount of the premiums due by Dejean, and each month sent to defendant duplicate bills covering the same. If defendant was not prompt enough in making the remittances to cover these items, a simple inquiry would have enlightened plaintiff of the status of the account. If plaintiff was not satisfied to further extend credit to Dejean, the practical and effective method of protecting itself was to cancel the policies. The authority to do this rested with plaintiff and not defendant.
 

 The mere fact that the defendant corporation carried this account on its books is not proof that defendant corporation’s officers admitted that it was liable. This was a mere bookkeeping entry for the purpose of keeping the account straight by showing the amount due plaintiff, the amount collected from Dejean, the commission retained, and the amount of the premium forwarded to the plaintiff.
 

 Thus it'will be seen that there is no merit in these respective arguments.
 

 Finally, counsel for the plaintiff refers us to a number of cases which hold in effect that it is not always necessary to show the authority of an officer to bind a corporation, by a resolution of the board of directors or stockholders, because, where the corporation has permitted the officer to do unauthorized acts for so long a period of time as to create a custom in that respect, and particularly where the corporation derives benefit'from such unauthorized act, it is estopped to deny the authority of its agent. Scharfenstein & Sons, Inc., v. Item Co., Ltd., 174 La. 794, 141 So. 463 ; Cook v. Ruston Oil Mills & Fertilizer Co., 170 La. 10, 127 So. 347; Robert Gair Co. v. Columbia Rice Packing Co., 124 La. 193, 50 So. 8.
 

 In the present case we do not find that there was any continuous line of conduct on the part of the officer of the corporation which would justify any one in concluding that the president and manager had the authority to bind the corporation in signing its name as an accommodation indorser. At the time these indorsements were made, the-premiums were past due and 90 per cent, of the amount belonged to the plaintiff and 10 per cent, representing the commission, belonged to the defendant. Both plaintiff’s and defendant’s representatives knew of the weak and hazardous financial position of Dejean. The trial court concluded from the evidence that Dejean was insolvent at that time, and that defendant corporation could not hope to gain the slightest advantage or benefit from indorsing his notes for so substantial an amount of money. As a matter of fact, defendant, instead of getting any advantage or benefit from its indorsements, could only expect trouble and loss as a result thereof.
 

 In the several above-cited cases, the corporation received a distinct advantage and benefit from the alleged unauthorized act of its agent, and, having accepted and retained the
 
 *90
 
 benefit, the court concluded it was estopped to deny that its agents or officers were properly authorized. The courts there also found that the alleged unauthorized acts of the representative were in furtherance of and incidental to the corporation’s business. It was not in furtherance of the defendant’s business or incidental thereto for its president and manager to attempt to bind the corporation as an accommodation indorser, to secure a pre-existing and delinquent debt of one of its clients or patrons, who was on the verge of bankruptcy.
 

 For the reasons assigned, the judgment appealed from is affirmed.