HIGGINS, Justice.
 

 This is an action by two of the minority stockholders, who seek to have the court appoint a receiver of the corporation because of alleged ultra vires acts on the part of the officers of the corporation.
 

 E. B. Proctor, as special manager of the Cotton Insurance Association, intervened as a creditor of the corporation and joined the plaintiffs in asking for a receivership on practically the same grounds.
 

 The corporation filed an answer, admitting the facts alleged in the petition, and annexed to the answer a resolution of the board of directors, who, in substance, repudiated their former resolution, authorizing the alleged ultra vires acts complained of, stating that they labored under a misapprehension of their legal rights in the matter.
 

 Mr. Edward H.' Estorge, a stockholder and a part owner of the property formerly owned by the corporation, intervened and opposed the appointment of the receiver, denying that, the alleged complained of acts of the officers' of the company were ultra vires or unauthorized. He also pleaded prescription of 90- and 20 days, under the provisions of sections 41 and 52 of Act No. 250 of 1928. He also claimed a reasonable attorney’s fee, under Act No. 117 of 1916, in the event plaintiffs’' suit would be dismissed.
 

 Plaintiffs filed an exception of no right or cause of action, questioning the right of Mr. Estorge to intervene in the case. The trial court overruled the exception. The ruling of the trial court was correct. Motor Sales & Service Co. v. J. D. Kerr Gravel Co., 158 La. 327, 337, 104 So. 61; C. P. arts. 389, 394.
 

 On the trial of the case on the merits there was judgment dismissing the plaintiffs’ suit and the demands of the intervener Proctor, and awarding the intervener Mr. Estorge the sum of $250, as attorney’s fees.
 

 Plaintiffs alone have appealed, and, consequently, the claims of the intervener Proctor cannot be reviewed by us. Laloire v. Wiltz, 31 La. Ann. 436; Simonds v. McMichael, 46 La. Ann. 474, 15 So. 23; Conery v. His Creditors, 118 La. 161, 42 So. 760.
 

 The Opelousas Insurance Agency, Inc., was a corporation organized and existing under the laws of the state of Louisiana, its capital stock being the sum of $10,000, which was divided into 1,000 shares of a par value of $10 each. For a number of years it successfully and profitably represented a great many fire, casualty, tornado, and other classes of insurance companies, but in the year 1931, became heavily indebted to the various com
 
 *94
 
 panies it represented, for delinquent premiums aggregating $17,010.49.
 

 On February 16, 1932, a meeting was held at the corporation’s office, at Opelousas, La., and was attended by the president and manager of the corporation and the representatives of a great number of the insurance companies. As a result of the conference, a writ-ten agreement was entered into between Mr. J. E. Buck, as trustee for the insurance companies, and Mr. H. D. Larcade, Jr., president and manager of the defendant corporation, in which it was agreed that all of the notes, accounts receivable, etc., due the corporation for premiums on policies issued prior to January 1, 1932, were to be transferred and delivered unto J. E. Buck, as trustee. The corporation was authorized to collect the items for the account of the trustee and to make a special deposit of all funds collected, in order that they might be distributed by the trusteé to the creditors. In the event the notes, accounts, etc., were uncollectable, after diligent effort, the companies reserved the right to cancel the policies unless additional time was granted by the trustee for the payment of the premium. The trustee was given the full right, authority, and power to operate the business, assets, and affairs of the defendant corporation on such terms and conditions as the trustee might deem fit and proper, in the event the corporation neglected or failed to comply with its obligations.
 

 As to business written by the corporation subsequent to January 1, 1932, it was agreed that the premiums due therefor would be paid not later than the 10th day of the third month, after the one in which the policy or policies may have been written. The contract also contained a provision, that, if the corporation failed or neglected to comply with its obligation to pay the premiums due on policies issued after January 1, 1932, all of the assets of the defendant corporation of every nature and kind, including good will, books, papers, documents, accounts, maps, office furniture,' and everything owned and possessed by the corporation, should be transferred and delivered to the trustee for the benefit of the insurance companies.
 

 On March 7, 1932, a written resolution signed by all the members of the board of directors of the corporation was adopted, ratifying and confirming the actions of the president and manager in entering into the contract and agreement of February 16, 1932.
 

 The corppration, having failed to meet the premiums due on business written subsequent to January 1, 1932, acknowledged its default and inability to comply with the contract, and its president and manager, in behalf of the corporation, on May 9, 1933, signed a written agreement, transferring and delivering all of the assets, business, and affairs of the corporation to Mr. Buck, as trustee for the insurance companies.
 

 On May 19, 1933, the trustee of the insurance companies, in writing, for valuable consideration, transferred and delivered to Archie Dunbar, J. Alonzo Dunbar, and Edward H. Estorge, all of the assets, affairs, and business of the corporation, including good will, bills, notes, books, papers, etc., leaving the corporation without any species of property whatsoever.
 

 All of the facts in the ease as above siated are admitted, and only questions of law are
 
 *96
 
 presented, i. e., whether or not the acts of the officers of the corporation were ultra vires.
 

 It is conceded that the corporation was unable to meet its liabilities which were long past due. The charter of the corporation does not contain any provision as to how all of the assets of the corporation may be disposed of, and, in the absence of such a stipulation, we must look to the statute law of our state, to determine under what circumstances a voluntary transfer of all of the property of a corporation may be made. Section 41 of Act No. 250 of 1928 provides, in part, as follows:
 

 “I. A voluntary sale, lease or exchange, or other disposition of all the assets of a corporation, including its good will, franchise and/or other rights may be authorized by it upon such terms and conditions as it deems expedient, including an exchange for shares and/or securities of another corporation, domestic or foreign.
 

 “II. Unless otherwise provided in the articles, such authorization shall be given at a meeting of shareholders, duly called for the purpose, and by such vote of the shareholders as may be provided for in the articles or, if there be no specific provision relating thereto in the articles, then
 

 “(a) if the corporation be able to meet its liabilities then matured, by the vote of the holders of two-thirds of the voting power, but
 

 “(b) if the corporation be unable to meet its liabilities then matured, by the vote of two-thirds of the board of directors.
 

 “III. This Section shall not be construed to authorize a conveyance or exchange of assets in fraud of corporate creditors or of minority shareholders, or shareholders without voting rights, or in violation of Act
 
 270
 
 of 1926 (Bulk Sales Law). (Parenthesis ours.) * * *
 

 “V. An action or suit to enjoin or set aside a conveyance by a corporation on the ground that the provision of this Act relating to the sale, lease, exchange or other disposition of all or substantially all of the assets of the corporation have not been complied with, shall be brought within ninety days after the corporate action purporting to authorize such disposition was taken, or the same shall be forever barred."
 

 Since the defendant corporation was unable to meet its liabilities then matured, it is clear that two-thirds of the board of directors of the corporation, under the above-quoted language, had the right, authority, and power to transfer all of the corporate assets.
 

 The written resolution ratifying, approving, and confirming the contract of February 16, 1932, is signed by all of the members- of the board of directors, who owned the vast majority of the stock of the corporation.
 

 The fact that Mr. Larcade testified that the resolution was not adopted at a formal meeting, but was signed by the respective members of the board of directors at their office or homes, does not affect the legality of the resolution. It appears that the directors were informed on the subject and knew of the action of the president and manager in signing the contract of February 16, 1932, and acquiesced -in it. Williams v. Ellerslie Planting Co., 132 La. 332, 61 So. 392: Robert Gair Co. v. Columbia Rice Packing Co., 124 La. 193, 50 So. 8; Scharfenstein & Sons, Inc., v. Item
 
 *98
 
 Co., Ltd., 174 La. 794, 141 So. 463; City Savings Bank & Trust Co. v. Shreveport Brick Co., Inc., 172 La. 471, 134 So. 397.
 

 The actions of the president and manager of the'corporation in entering into and signing the agreement of February 16, 1932, having been ratified, approved, and confirmed by the hoard of directors of the corporation on March 9,1932, and the contract having expressly contained the provision that, in the event of the failure or neglect of the corporation to meet its obligations, all of its assets would be transferred to the trustee, there was no need for further authorization of the president and manager to carry out the contract of February 16, 1932. He had full and complete authority under the resolution of the board of directors, of March 9, 1932, to sign the act of transfer and deliver all of the assets to the trustee on May 9,1932.
 

 The transfer was for a valuable consideration, i. e., the cancellation of debts of the corporation in favor of the insurance companies, in excess of $17,000, which appears to be more than the value of the' assets of the corporation.
 

 There is no evidence that the board of directors and the president and manager of the corporation did anything to defraud the creditors or the minority stockholders of their rights. Nor was there any violation of the provisions of the Bulk Sales Law, Act No. 270 of 1926. The only creditor to complain was Proctor, and, as we have already said, he failed to appeal from an adverse judgment. In addition to this we might say that in a separate suit, entitled Proctor, Special Manager, v. Opelousas Insurance Agency, Inc., 158 So. 627,1 we have this day affirmed the decision of the trial court holding that Proctor was not a creditor. It appears that the officers of the corporation were representative business men and did the best they could with a bad situation resulting mainly from the depression and bank failures.
 

 We conclude that the acts of the president and manager of the corporation being legally authorized by the board of directors, under the express provisions of section 41 of Act No. 250 of 1928, the alleged ground for asking for a receivership, i. e., ultra vires acts, is without merit.
 

 The $250 allowed as attorney’s fees, under Act No. 117 of 1916, appears to us to be reasonable and fair. Motor Sales & Service Co. v. J. D. Kerr Gravel Co., 158 La. 327, 337, 104 So. 61.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 181 La. 79.