Brodnax & Co. vs. Steinhardt & Co.

No. 11,826.

BRODNAX & CO. VS. STEINHARDT & CO.

In the agreement between partners for the purchase in the West and sale in Europe of grain, the stipulation for the delivery here by the purchasing partner of the grain free on board, the other binding himself to provide the ships for the transportation of the grain is not inconsistent with the collateral agreement that the terminal charges here—*i. e.*, storage with the incidental necessary inspection, insurance and interest while the grain is stored in elevators, shall be divided equally between the partners, all such charges having been foreseen as apt to arise and incurred owing to the inability to provide ships to take the grain as it arrived, of the partner assuming that obligation.

Interest charges in an account rendered and acquiesced in become part of the amount shown to be due on which subsequent interest may be charged. 12 An. 20; 4 An. 210; 39 An. 791.

The account rendered and acquiesced in is proof of the indebtedness it exhibits. 1 Greenleaf, Sec. 212; 3 Rob. 361; 12 An. 20; 39 An. 971.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Dart & Kernan* for Plaintiffs, Appellees.

*Bernard Titche* for Defendants, Appellants.

Argued and submitted February 27, 1896.
Opinion handed down March 9, 1896.

The opinion of the court was delivered by

MILLER, J. The plaintiffs sue for an amount claimed to be due under an agreement for the purchase and sale of grain, under which the plaintiffs were to buy, the defendants to take charge of the transportation and sale of the grain in Europe, and the profits on the sales to be divided. The suit for a specific sum was met by the exception that plaintiffs' remedy was to sue for a settlement of the partnership. This resulted in an amended petition and a reference to accountants under defendants' answer denying all liability and claiming a balance due by plaintiffs. From the judgment in the plaintiffs' favor defendants appeal.

The course of business of these parties was for the plaintiffs to

Brodnax & Co. vs. Steinhardt & Co.

buy the grain in the West and the defendants to find the purchaser in Europe. The completion of the transaction was signified by confirmations, as they are termed in the record, passing between plaintiffs and defendants, those of the plaintiffs announcing confirmations of sale to defendants, specifying the bushels of grain and the prices; the replies of defendants, stating their confirmations as purchasers from plaintiffs, of the grain at the price in Europe, for which it was to be sold. In communicating their confirmations, defendants' form was substantially a confirmation of plaintiffs' purchase of the specified quantity at a stated price, adding F. O. B., meaning delivery of the grain free on board. In plaintiffs' confirmation of sales, free on board, is not stated, but the addition is "subject to our agreement as to expenses," sometimes omitted, but words used suggesting, in our view, the same idea. This difference in the form of the confirmation points to that, we conceive to be the real issue between the parties. The defendants' contention being that F. O. B. excluded any charge by plaintiffs for inspection, storage or charges for interest on the money advanced on the purchases; the plaintiff insisting it was agreed that such items, called terminal charges, were to be borne equally in the settlement of accounts, hence the wording of their confirmations subject to expenses according to agreement. Under the plaintiffs' contention, they were entitled to credit for one-half the selling price in Europe, less ocean freight and insurance and such interest as defendant might pay, and to one-half besides of the terminal charges here paid by them. To this division of these terminal charges defendants strenuously dissent.

It is in proof that the transactions between these parties were in progress from September, 1891, to March, 1892; that the confirmations were exchanged in respect to each transaction, and that plaintiffs rendered their accounts. In all this intercourse there was no objection to the account, save as to these terminal charges. By agreement of the parties the accounts were referred to their respective book-keepers; the book-keeper of the plaintiff reported the correctness of the accounts with the terminal charges in dispute, the book-keeper of defendant, his colleague testifies, agreed to the report, but after conferring, as we infer from the record, with defendants, declined to sign it. We think the accounts carry the force resulting from their rendition and the absence of any objection

save as to the terminal charges. 1 Greenleaf, Sec. 212; Shaw vs. Oakey, 3 Rob. 361; Keane vs. Branden, 12 An. 20; Allen, West & Bush vs. Nettles, 39 An. 791. In this court the discussion has been devoted mainly to the terminal charges, in the appreciation of both parties the controlling issue.

The testimony for plaintiff is that these terminal charges were to be divided. That of defendants is to the contrary. It is not disputed plaintiffs were to buy; that defendants were to purchase, paying the selling price in Europe; that they were to furnish the ship contracts, i. e. the ships to carry the grain, the profits to be divided on the basis of the selling price in Europe, less ocean freights and insurance. The terminal charges were for storage, inspection fees, insurance and interest on the advances to buy the grain, all arising on this side and due entirely to delay in shipping the grain. All this was foreseen, is the testimony of defendants, and as these charges would arise from the ships not being on hand, and which it was defendants' engagement to furnish, it is testified, it was agreed that along with the f. o. b. stipulation was the agreement to share the terminal charges. The payment of these charges by defendants, we conceive established. If the defendants' contention succeeds, the whole of these terminal charges will be thrown on plaintiffs. The profit to be divided is the difference between the purchasing price of the grain and the selling price on the side, less freight and insurance paid by defendants charged under the agreement with the transportation. On defendants' theory they are to be reimbursed all charges they paid, and with these deductions, get one-half of the selling price. Their construction excludes plaintiffs from any reimbursement of the charges they paid for storage, inspection requisite before grain can be put in elevators, and insurance incurred on this side, because the ships to be furnished by defendants were not on hand. If the agreement proposed an equal division between those partners, the defendants' construction is not in accord with that purpose.

In the conflict between the testimony of one of the plaintiffs and the member of defendants' firm testifying to the agreement, defendants largely rely on the f. o. b. stipulation. In the ordinary contract between purchaser and buyer that stipulation would undoubtedly bind the purchaser for the price only, when the commodity at the buyer's expense is on board the ship. In this case the contract was

between partners, one of them engaging to furnish the ships. The ships could not be had to take the grain promptly, and if on hand at the time there would have been no occasion to store the grain in the elevators, or for the consequent inspection fees, or insurance or interest on the purchase money for the period of delay in shipping the grain. In view of defendants' engagement to provide the ships, it seems to us the f. o. b. stipulation does not carry its usual force, that is, does not necessarily exclude the additional collateral engagement as to terminal charges here, due to the inability of defendants to have ships on hand to take the grain. This view, we think, removes any supposed inconsistency between the f. o. b. stipulation and the qualification insisted on by plaintiffs. Their interpretation seems reasonable. The course of the business of these parties is, we think, significant against defendants. In their own accounts, after these terminal charges had been the subject of some discussion, such charges were recognized. We have noticed defendants' contention that these accounts were furnished by their clerk, not aware of the agreement, in the absence of the member of the firm cognizant of the subject, and were rendered at the instance of defendants. The agency of plaintiffs in procuring the rendition of these accounts is not supported by proof. When plaintiffs became importunate for a settlement these terminal charges were disputed, but for a length of time the accounts of defendants importing the recognition of such items elicited no dissent. The inspection fees defendants insisted should be according to the course of trade borne by the parties in the West. As we gather from the record that charge is usually paid on this side, and there is no basis exhibited in the record or indicated in the brief of defendants on which we can reject that item. The discussion as to that item carries its force with reference to the other terminal charges. There is another part of this record which in our view must have its weight. Early in the course of these shipments the defendants objected to some of these charges. The objection was met by the plaintiffs' insistence that the charges were part of the agreement and payment followed. Then to settle, we presume, the question for the future plaintiffs addressed defendants a letter in which the agreement was plainly set forth according to plaintiffs' appreciation, that is, that the grain to be delivered here on board at the cost in the West, one-half the profit and the terminal charges to be divided

equally.  If the parties differed in their understanding of the oral agreement then there was none arising out of their intercourse.  But this letter in distinct terms laid the basis on which the plaintiffs proposed to continue the transactions and affirmed the plaintiffs' view of the agreement.  To that letter there was no reply.  If not concurred in by defendants it was their natural course to dissent and the shipments would doubtless have stopped at once and this controversy would have never arisen.  But the shipments went on, the plaintiffs paying the terminal charges, relying on reimbursement of half the amounts.  In the confirmations of the defendants f. o. b. occurs with no reference to terminal charges, while in those of defendants f. o. b. is accompanied with the statement of the divisions of the terminal charges here as per agreement.  We find no dissent on this point coming from defendants until after the transactions were closed and the plaintiffs were seeking a settlement.  It is our conclusion the agreement contended for by plaintiffs is sustained by the testimony and confirmed by the course of business of the parties.  The lower court gave very careful attention to the controversy and with the additional assistance to a proper solution afforded by ihe personal observation of the manner in which the witnesses testified, the lower court reached the same conclusion to which we are brought.

An account rendered and accepted exhibiting the amount due authorizes, we think, the charge of subsequent interest on that amount, although interest accrued is included in the account, and this, in our view, is an answer to the question raised by defendant as to interest charges.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.