(99 South. 350)

No. 23925.

## HAAS v. S. GUMBEL & CO.

(Jan. 7, 1924.    Rehearing Denied by Division C Feb. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. Factors ☞42—Verbal contract to hold cotton for agreed price held not sustained by sufficient proof.

In an action by a receiver against a cotton factor for profits on sales of cotton, under an alleged verbal contract whereby the factor was to hold the cotton for a stipulated minimum price for plaintiff's benefit, *held*, that

such verbal contract was not shown by satisfactory proof.

**2. Interest ⊚⟶35—Letter accepting offer of advances at more than statutory rate authorized such higher rate.**

Where a letter from a cotton factor offering to make advances stipulated for interest at 8 per cent. per annum, and the offer was accepted by letter, interest was chargeable at that rate despite Civ. Code, art. 2924, forbidding the collection of a higher rate of interest than 5 per cent. per annum unless agreed to in writing.

**3. Interest ⊚⟶67 — Finding that debtor had agreed to pay certain rate of interest sustained by evidence.**

In an action by seller of cotton against his factor to recover profits, wherein it was claimed that an interest charge of 8 per cent. was not authorized, *held*, that the evidence sustained the finding that defendant had agreed to pay such rate of interest.

**4. Corporations ⊚⟶399(4)—Contract of president and general manager held within apparent authority and binding without ratification by directors.**

Where the president of a mercantile company dealing in cotton was its general manager and transacted all its business without obtaining special authority from the board of directors, a contract by him relating to futures in cotton *held* within his apparent authority and not invalid because not authorized or ratified by a resolution of the board.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by John A. Haas, receiver of Opelousas Mercantile Company, against S. Gumbel & Co. Judgment for defendant, and plaintiff appeals. Affirmed.

John W. Lewis, of Opelousas, for appellant.

Monroe & Lemann, of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

O'NIELL, C. J. This suit is based upon three distinct claims, amounting to $38,084.56. The Opelousas Mercantile Company, now in the hands of a receiver, shipped cotton to the defendant, a cotton factor in New Orleans, during the seasons of 1913–14 and 1914–15. The principal claim is for $22,197.03, for profits claimed on sales of cotton that was shipped under an alleged verbal contract on the part of the defendant to hold the cotton for a stipulated minimum price. Another of the claims is for $3,730.65, for alleged overcharges of interest on money advanced by defendant in the season of 1914–15. The interest was charged at 8 per cent., and plaintiff claims that the rate should have been 5 per cent. The third claim is for $12,156.88, for hedges of cotton in the future market, which were negotiated by defendant for the mercantile company's account, and which plaintiff alleges were not authorized.

There is also an alternative demand for a reduction of the interest charged on the account rendered by defendant for the season of 1913–14.

Answering the suit, the defendant denied each and all of the claims, and set up a demand in reconvention for $6,534.03, alleged to be the balance due by plaintiff, according to an itemized account rendered of all of the transactions had between the parties.

There was judgment for the defendant, rejecting the plaintiff's demands and allowing the defendant's reconventional demand to the extent of $2,346.97. The reduction of the claim from $6,534.03 was made because of the charge of interest at 8 per cent. instead of 5 per cent. on the money advanced by defendant on the cotton shipped by plaintiff in the season of 1914–15.

The plaintiff has appealed, and the defendant, answering the appeal, prays for judgment for all of the reconventional demand.

[1] There is not sufficient or satisfactory proof of the alleged verbal contract, on which is based the claim for $22,197.03 profit on

the cotton shipped in 1914–15. At the close of the season of 1913–14—that is, on the 10th of September, 1914—defendant rendered a complete account of the transactions, showing a balance of $55,318.23 due by plaintiff, against which defendant held for plaintiff's account 942 bales of cotton of inferior grade.

On the 13th of December, 1914, B. F. Lengsfield, representing the defendant, went to plaintiff's place of business, in Opelousas, to effect a settlement of the account. Lengsfield dealt with Isaac Roos, who was the president and manager of the Opélousas Mercantile Company and controlled its affairs. Roos acknowledged to Lengsfield that the mercantile company was not financially able to pay or secure the debt. After some discussion, it was agreed that the mercantile company would buy cotton in the season of 1914–15 and ship it to the defendant, drawing sight drafts on defendant, with bills of lading attached, for the invoices paid by the mercantile company. It was agreed that Gumbel & Co. would sell the cotton according to their judgment, for the mercantile company's account. The agreement made between Roos and Lengsfield was confirmed by a letter written by defendant to the mercantile company, on the 14th of December, 1914, viz.:

"We beg to confirm the arrangement entered into with you by our Mr. Lengsfield, the substance of which is that you will ship us all the cotton you handle and control and draw on us sight draft, original Bs/L attached thereto, and send us the invoices showing weights and class and actual cost of purchase made by you from day to day, it being understood that the cotton which you are to ship us is to be disposed of in accordance with our judgment.

"We trust that the business will be satisfactory, and you can rest assured that we will use every possible effort at this end of the line in order to promote the selling of your cotton to the best of our ability. Of course, it is understood that this arrangement is in full force and effect until we notify you otherwise," etc.

155 LA.—14

A considerable quantity of cotton was bought by the mercantile company in the season of 1914–15 and shipped to defendant, the net result being a reduction of the debt of the mercantile company from $55,318.23 to $2,346.97, when the 942 bales of cotton from the previous season were sold.

The alleged verbal agreement said to have been made between Lengsfield and Roos on the 13th day of December, 1914, as testified to by Roos, whose testimony was in some measure corroborated by that of his wife and his brother-in-law, was, in substance, this: That the defendant would furnish the money for Roos' company to buy 5,000 bales of cotton of the season of 1914–15, the prevailing price being then 6¼ cents per pound; that, of the 5,000 bales, 1,058 should be added to the 942 bales on hand, and the total of 2,000 bales should be held by defendant and not sold at a price less than 9½ cents per pound; that the profit to be made on the sales of the 2,000 bales of cotton at 9½ cents per pound would extinguish the debt due by the mercantile company to defendant, and the remaining 3,942 bales of cotton "would not be held pledged or in any manner accountable for the alleged balance on the account of 1913–14, and would inevitably result in a large profit to the Opelousas Mercantile Company." It is for the failure to realize that profit that the plaintiff now claims a loss of $22,197.03.

Mr. Roos' wife and brother-in-law probably did not hear all of the conversation between Mr. Lengsfield and Mr. Roos, on the 13th of December, 1914, and therefore did not understand the details of the agreement that was made. Mr. Roos was surely mistaken, either in his original understanding of the agreement or in his recollection of it. It is almost beyond reason to believe that, when the prevailing price of cotton was 6¼ cents per pound, Mr. Lengsfield, for the defendant, and without any compensating ad-

vantage or consideration whatever, guaranteed the mercantile company that the 942 bales of cotton of inferior grade, which the defendant then held for the mercantile company's account, and 1,058 bales of cotton to be bought and shipped by the mercantile company—making a total of 2,000 bales of cotton—would eventually be sold at 9½ cents per pound, for the mercantile company's account. We say that there was no motive or consideration for Mr. Lengsfield to make such an agreement—no advantage whatever to be gained by the defendant—because the record shows that the defendant could have employed competent cotton buyers at the usual commission of 50 cents per bale, and it was admitted by Mr. Roos, in his testimony in this case, that the 942 bales of cotton held by the defendant when Mr. Lengsfield went to Opelousas, were subject to sale at such price or prices as the defendant might deem right, and that the proceeds were attributable to the mercantile company's debt.

Mr. Lengsfield, testifying in this case, denied that he had guaranteed or agreed that 2,000 bales, or any part whatever, of the mercantile company's cotton would be held for 9½ cents per pound. Aside from the likelihood of Mr. Lengsfield's statement, the defendant is entitled to the benefit of the precaution which was taken, by the letter of confirmation, written to the mercantile company on the next day after Mr. Lengsfield's visit to Opelousas. If the statement of the agreement, as made in the letter of confirmation, was not in accord with the understanding of Mr. Roos, it was his duty as president and manager of the mercantile company, to make known the defendant's error.

Referring now to the complaint that interest was charged at the rate of 8 per cent. instead of 5 per cent. on the money advanced in the season of 1913–14, we concur in the judgment that the complaint is stale and un-profitable. The defendant's consent to make advances to the Opelousas Mercantile Company was given reluctantly. After several requests from Mr. Roos, as president of the mercantile company, defendant consented to advance as much as $1,500, saying, in a letter dated the 17th of May, 1913, that the rate of interest would be 8 per cent. The defendant inclosed in the letter a promissory note for the mercantile company to sign, for $1,500; and, in a letter dated the 19th of May, 1913, the mercantile company acknowledged receipt of defendant's letter of the 17th of May and returned the note duly signed. It is contended now that the stipulation for interest at 8 per cent. in the letter of May 17th, was restricted to the $1,500 represented by the promissory note. We do not think so, because, inasmuch as the note itself contained the stipulation for interest at 8 per cent., there was no need for any further stipulation with regard to the $1,500 represented by the note. It is quite certain that the mercantile company construed the stipulation for interest at 8 per cent., in the letter of May 17, 1913, as applying to any and all money that might be advanced by defendant during the cotton season of 1913–14. The account which was rendered by defendant from time to time showed that interest was charged and credited at 8 per cent. Each and every page of the detailed account rendered on the 10th of September, 1914, bore the statement in bold, legible type, printed at the top of each page, that interest was charged at 8 per cent. per annum. There was also printed at the top of each page of the account, in bold type and partly in red ink, this request and warning, viz.:

"Please examine this account carefully, and kindly advise us if you find any item in it to which you object.

"If we do not hear from you within ten days from receipt of this account, we shall take it for granted that you have examined same and find it correct."

[2] The lines reading "Please examine this account" and "If we do not hear from you within ten days" are printed in red ink. The mercantile company was therefore well informed that the account bore interest at 8 per cent., in accord with the stipulation in the defendant's letter consenting to make the advances. It is true, article 2924 of the Civil Code forbids the collection of a higher rate of interest than 5 per cent. per annum unless it has been agreed to in writing. But the Opelousas Mercantile Company, in this case, agreed to the higher rate of interest, by accepting in writing, in the letter dated the 19th of May, 1913, the proposition made in defendant's letter dated the 17th of May, 1913, containing the stipulation for interest at 8 per cent. per annum. Besides, there are several decisions maintaining that, when a mercantile account has been closed by rendition and acceptance without objection, the debtor cannot thereafter contest charges of interest at 8 per cent. on the account. Allen, West & Bush v. Nettles, 39 La. Ann. 788, 2 South. 609; Flower & King v. O'Bannon, 43 La. Ann. 1044, 10 South. 376; Brodnax & Co. v. Steinhardt & Co., 48 La. Ann. 684, 19 South. 572; In re Leeds & Co., 49 La. Ann. 506, 21 South. 617; Dannenmann & Charlton v. Charlton, 113 La. 276, 36 South. 965.

[3] Our conclusion is that the charge of 8 per cent. interest on the money advanced in the season of 1913–14 was authorized and approved by the mercantile company. But it is not so with regard to the money advanced in the season of 1914–15. Therefore the judgment reducing the reconventional demand to the extent of the excessive interest charges for 1914–15 is correct.

Referring now to plaintiff's complaint about the future transactions, made by defendant for the purpose of hedging the mercantile company's cotton, our opinion is that the transactions were authorized and ratified by the mercantile company. The validity, as well as the importance, of future transactions is recognized by the rules of the New Orleans Cotton Exchange, by the future contracts in use on the exchange, and by acts of Congress. See Act of August 11, 1916, c. 313, pt. A, 39 Stat. 476, amended by Act of March 4, 1919, c. 125 (U. S. Comp. St. Ann. Supp. 1919, § 6309e), declaring that the price fixed in such a contract shall be the price to be paid for middling cotton, and that, in case cotton of other grades shall be delivered or tendered in settlement, the differences above or below the contract price to be paid by the receiver for such grades shall be the actual commercial differences provided for in section 6 of the United States Cotton Futures Act. Browne v. Thorn & Maginnis, 260 U. S. 137, 43 Sup. Ct. 36, 67 L. Ed. 171, is authority for the doctrine:

"Hedging—a means whereby manufacturers and others who have to make contracts of purchase and sale in advance, secure themselves against fluctuations of the market by counter contracts—is prima facie lawful."

There were two future transactions which plaintiff complains of. The first transaction was a hedge of 200 bales of cotton, in November, 1913, and the second was a hedge of 2,500 bales on the 15th of December, 1913. In each instance the mercantile company was advised of the transaction, and authorized and ratified it by letter. The president of the mercantile company, testifying in this case, admitted that the future transactions complained of in plaintiff's petition were authorized by the mercantile company and were entirely satisfactory.

[4] It is suggested in the briefs filed by counsel for appellant that the future transactions complained of should have been authorized or ratified by a resolution of the board of directors of the Opelousas Mercantile Company, and that the authority and confirmation given by the president, for the

company, was not sufficient. As we have said, Mr. Roos was not only the president of the Opelousas Mercantile Company. He was its general manager and transacted all of its business without obtaining special authority from the board of directors for any particular transaction. Under such circumstances, the defendant, dealing with the president of the corporation in the usual manner and course of business, not ultra vires of the corporation, had the right to assume that the president of the corporation was actually invested with the authority which he was exercising. Cook on Corporations (6th Ed.) p. 2290; Blanc v. Germania National Bank, 114 La. 739, 38 South. 537; Berlin v. P. L. Cusachs, 114 La. 744, 38 South. 539; Robert Gair Co. v. Columbia Rice Packing Co., 124 La. 193, 50 South. 8.

Aside from the law cited, the point was not made in the petition, and was in fact disclaimed by plaintiff's attorney in the trial of the case, that Mr. Roos, as president of the mercantile company, was not authorized to deal in futures, or to allow his broker to do so.

The judgment is affirmed at appellant's cost.

Rehearing refused by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.