No. 4176

Second Circuit

(Second Division)

## ELSTON, PRINCE & McDADE, INC., v. FIRST STATE BANK OF PLAIN DEALING

(March 16, 1932. Opinion and Decree.)

Dickson & Denny, of Shreveport, attorneys for plaintiff, appellant.

Smitherman, Tucker & Mason, of Shreveport, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff corporation brought this action to recover from defendant bank the sum of $508.94, with legal interest from judicial demand to cover interest at the rate of 4 per cent per annum on plaintiff's daily balances of deposits subject to check made with defendant during the period from January 1, 1924, to April 30, 1931, under an alleged oral contract and agreement to that effect.

It is alleged that the agreement was entered into on October 23, 1923, by and between J. W. Elston, Jr., as representing plaintiff, and Dr. S. E. Prince, as president of and representing defendant; that the contract which was oral was as follows:

Paragraph 4. That the said defendant agreed to pay plaintiff 4 per cent per annum on daily balances on deposits made by the plaintiff in said bank; plaintiff was to be credited with interest at the rate of 4 per cent per annum on all daily balances that it placed with said bank.

Paragraph 5. That this contract was carried into effect, and that plaintiff received credit of interest on all balances up to January 1, 1924, but that since that date they have received no further credits.

Plaintiff attaches to and makes part of the petition an itemized statement which it is alleged shows the correct amounts due under the contract, aggregating the sum of $508.94. It is further alleged that demands have often been made of said S. E. Prince, president, and he had often promised and instructed John J. Doles, the cashier of said bank, to give plaintiff the credits due plaintiff but none were ever received.

Defendant filed exception of no right or cause of action which was tried and overruled by the court; whereupon defendant filed answer of general denial of liability; averred that it rendered monthly statements to plaintiff since January 1, 1924, and never on any of said statements was plaintiff credited with any interest ' on the balances of deposits; that plaintiff never at any time complained or objected, and plaintiff is now estopped to deny the correctness of said statements.

Defendant pleads, in the alternative, that, if S. E. Prince made any such agreement as alleged, he acted beyond the scope of his authority in so doing, and defendant is not bound thereby.

Plaintiff prosecutes this appeal from a judgment rejecting its demands.

At the beginning of the trial, and before the testimony was begun to be offered, defendant entered the objections to the introduction of any evidence in the case (quoting):

"On the ground and for the reason that the plaintiff in paragraph 3, alleges that the contract to pay interest herein involved was an oral contract, and an agreement to pay conventional interest according to Civil Code, 2924, must be in writing; and testimonial proof is not to be admitted in such cases."

These objections were overruled by the court, and testimony was adduced subject to the objections made and counsel's exceptions to the court's ruling.

The exception of no cause of action filed does not disclose the grounds upon which same was made. However, it appears from the record as made up that the exception was leveled at the allegation of the petition wherein it alleges an oral agreement to pay the interest claimed, defendant contending that, under article 2924 of the Revised Civil Code, such a contract must be in writing.

After the case was submitted, the judge, according to his written opinion filed in the record, changed his views regarding the exception filed, and his former ruling on the objections made to the testimony. He stated (quoting from the opinion):

"After further consideration of the law, as it appears applicable here, I am of the opinion that the objection to oral testimony to establish an agreement to pay interest should have been sustained. Conventional interest may be fixed at any rate not exceeding 8% per annum, but must be fixed in writing. No interest is due on demand deposits in banks until after payment of the balance on deposit has been demanded and refused, and then it would be at the rate of 5% per annum. This conclusion is of course, sufficient to defeat the demand of plaintiff, but it is my opinion that if all the testimony offered should be considered that even then the plaintiff has failed to meet the burden that is on it to establish its claim."

Thus it is seen that the judge found for the defendant, both upon the law and facts. We are in full accord with the learned trial judge in his views as thus expressed.

Plaintiff's counsel in brief filed quotes from Act No. 193 of 1910, sec. 7, to the point that banks have the right to receive deposits and pay interest thereon, as follows:

"That any State banking association, savings bank or trust company receiving funds as deposits and contracting and agreeing to pay five per cent or more per annum interest therefor shall class the same as borrowed money and certificates shall be issued therefor."

We do not understand the act to mean that banks are permitted to enter into such contracts orally. On the contrary, it pro-

vides that certificates shall be issued to the depositor, which necessarily implies a written contract. The same section of the act continues:

"All such deposits shall be carried on the books of the bank receiving the same as 'certificates of deposit for borrowed money.'"

The fact that no mention is made in the act as to whether banks are empowered to pay interest on deposits at a less rate than 5 per cent per annum, and how such deposits shall be characterized, does not, as we take it, mean that, if and when a lesser rate is to be paid, it can be done orally and without a contract expressed in writing. Act No. 100 of 1904 provides:

"That all banks duly and legally organized under the laws of the State may issue interest-bearing time certificates to depositors."

This act no doubt contemplates giving banks authority to accept deposits at a less rate of interest than 5 per cent. But it will be noted that evidence of such payment of interest is to be in writing, to-wit: "Interest-bearing time certificates." This class of business is apparently differentiated from the former, in that the former is to be carried as loans upon the bank's books whereas the latter is carried as "interest-bearing time certificates." In both cases, written interest-bearing certificates are provided for in the statute, which clearly indicates that evidence of the contract to pay interest shall be in writing.

Plaintiff's counsel, arguing to the point that the transaction had with defendant constituted a loan, quotes from defendant's charter wherein it recites that it shall have the right "to exercise all incidental powers necessary to carry on its business," which language counsel interprets to mean power "to borrow money and pay interest there-

for." This is true, but that does not mean that a bank or its officers can contract orally to pay interest on borrowed money, nor that it can be done without a resolution of the board of directors authorizing same, spread upon the minute book of the bank.

Counsel would have the court take the view that Dr. Prince, as president of defendant bank, was authorized by virtue of his office to borrow money and contract to pay interest for same or accept deposits and bind the bank by oral contract to pay interest on daily balances, just as in his judgment he deemed proper. Such interpretation cannot, we think, be placed upon the statutes governing the business of banking.

In Carter v. Brock, 162 La. 20, 110 So. 71, 74, the court, in discussing the provisions of Act No. 193 of 1910, and the amendments thereto, said:

"The statute does not prohibit an officer of a bank from borrowing money for it * * * but the prohibition relates only to the officer's doing so without a proper resolution of the board of directors, entered upon the minutes."

Regardless of whether the act of Dr. Prince, in accepting plaintiff's deposits and agreeing to pay interest on daily balances, can be termed a loan to the bank or not, he had no authority to so bind the bank without being specially authorized by resolution of the board of directors to do so. It is admitted that no such resolution was ever passed.

Counsel insists that, inasmuch as the bank paid plaintiff interest for the months of November and December, 1923, without objections, it amounted to a ratification of the alleged contract, and the bank was estopped from denying same thereafter. It must be remembered that the board of di-

rectors knew nothing of Dr. Prince's acts in this particular until several years later, and, when its attention was called to what had been done, it promptly repudiated the act and denied liability. The bank certainly cannot be estopped under such circumstances.

Counsel cites the case of Haas v. S. Gumbel & Co., 155 La. 421, 99 So. 350, as an example of a case where the court enforced a contract to pay conventional interest, although not reduced to writing. Counsel is in error as to the court's so holding in the cited case. The court found that the party claiming the 8 per cent interest had written the other a letter stipulating interest at that rate, to which the other party replied by letter accepting the stipulation. Thus the interest, which was conventional, was agreed upon in writing.

Counsel also cites Duruty v. Musacchia, 42 La. Ann. 362, 7 So. 555, 556, to the point that:

"In the absence of any written evidence of an agreement, the defendant can be made to pay legal interest," citing Civ. Code, art. 1940, which reads: "In cases where no conventional interest is stipulated, the legal interest, at the time the contract was made, shall be recovered."

Counsel must overlook the fact that plaintiff in the present case is suing under an alleged contract stipulating interest—not one wherein no interest is stipulated. It would therefore seem that the case and article cited have no application here. Besides, it is well known that daily balances on ordinary bank deposits subject to being checked out at will bear no interest, unless, of course, by some special agreement to that effect; and such agreement, we think, must be in writing.

There is a distinction between a deposit and a loan. We are warranted in taking judicial notice of the fact that, in the banking business, it has been and still is customary to treat loans and deposits as distinct and essentially dissimilar transactions. A loan is defined as a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrowed. It is presumptively made upon interest. The contrary is true of a deposit, in that the depositary must deliver the deposit on demand. A deposit is made primarily for the benefit of the depositor, while a loan is made for the benefit of the borrower. In the instant case the parties themselves treated the transaction as a deposit, tried the case below on that theory and the court found that a deposit was made. We say this because plaintiff apparently has shifted its position in that it claimed interest on daily deposits and now endeavors to have the court construe the transaction as a loan. The two positions are inconsistent. We prefer to treat the case as that of an ordinary deposit to plaintiff's checking account in defendant bank. Such is disclosed by the record. Under these circumstances defendant owed plaintiff no interest on such an account, without a special agreement or contract entered into between the parties for interest. Such would necessarily have been conventional interest.

It is clear, we think, that the particular transaction alleged upon by plaintiff, and whereon recovery is claimed, involves a claim for conventional interest.

Article 2924 of the Revised Civil Code is the basic law of this state on conventional interest and the rules of evidence in regard to its proof.

The article plainly says (quoting from Dart's revisions recently published):

"Interest is either legal or conventional. Legal interest is fixed at the following rates, to-wit:

"At five per cent on all sums which are the object of a judicial demand. Whence this is called judicial interest;

"And on sums discounted at banks at the rate established by their charters.

"The amount of the conventional interest can not exceed eight per cent. The same must be fixed in writing; testimonial proof of it is not admitted in any case."

Thus we see that proof of conventional interest by oral testimony is prohibited under the plain letter of the law. There are numerous decisions of the courts of this state recognizing and enforcing the law as announced by the Code, cited under the article in question.

It will be noted that the law does not fix the minimum rate chargeable for conventional interest. It is left to the parties to fix the rate in their contract. If the rate fixed be 4 per cent, there is no less reason to term it conventional interest, and that the fixing should be in writing, than if it was 8 per cent. The same law would govern the former as would the latter.

As the defendant's learned counsel have well said in their brief:

"The requirement of Article 2924, requiring conventional interest to be fixed in writing refers to the stipulation for conventional interest and not merely to the rate of conventional interest.

"The more logical distinction between legal interest and conventional interest is this,—that legal interest is interest imposed by law, and conventional interest is interest resulting from agreement between the parties. For example,—if the prohibition of the article refers only to the rate of interest in excess of legal interest, in cases where the law imposes legal interest of five per cent, interest between five and eight per cent would have to be stipulated in writing, but with respect to the contract where there would be no legal interest, as in the case of a deposit of money, the article would permit the showing of the agreement to pay interest by testimonial proof; the law would require in the first case proof in writing to show interest that could only result from convention, while in the latter case it would permit testimonial proof to show a convention to pay interest where none would otherwise be due, and which could result only from convention."

It is difficult, as suggested by counsel, to imagine a case where the rate of interest could be fixed in writing that would not at the same time provide for the agreement to pay interest. Laurent, a learned Belgian commentator on the French Civil Code, expressed the idea in the following words:

"Nevertheless, the rate is part of the convention; it is then impossible that the convention be solemn for the rate, and not solemn for the stipulation of interest itself." T. 26, No. 527, p. 551.

While there do not appear to be any decisions of the courts of this state involving stipulation of interest at less than the legal rate, there are several cases in our jurisprudence that lead unerringly to the conclusion that a writing is necessary to prove the contract to pay conventional interest, regardless of whether or not the rate is above or below the legal rate of 5 per cent. In Delacroix v. Prevost, 6 Mart. (O. S.) 278, the court said:

"We are of opinion, that the legislature did not intend to make writing an essential requisite in a convention fixing the rate of interest to be paid, but that its object was only the exclusion of the testimonial proof of such a convention. For if the oral convention was to be absolutely null and void, it would have been absurd to have gone further, and forbid the introduction of testimonial proof of it, since such kind of proof or any other could not be of any avail. The legislature meant only to afford to a defendant, from whom conventional interest is demanded, a shield to guard him against suborned witnesses. * * * No injury is done to the defend-

ant, if he be compelled to pay. Neither is any injury done him, if he be interrogated and required to answer thereon on oath. No man can be listened to, who complains that he is put in danger of perjuring himself."

"Conventional interest must, according to law, be fixed by writing; and testimonial proof of it is not admissible in any case." Kenner's Syndics v. Sims, 6 Mart. (N. S.) 66; Fishel v. Irwin, 132 La. 349, 61 So. 397.

"Conventional interest must be fixed in writing. The custom of merchants cannot change this law." Lee v. Goodrich, 21 La. Ann. 278.

"Notwithstanding the strong terms used in this article it has been held by our predecessors that writing was not of the essence of an agreement to pay interest, and that the Legislature only intended to exclude testimonial proof of such an agreement." Semere v. Semere, 10 La. Ann. 704; Civ. Code, art. 2895; Succession of Peytavin, 10 Rob. 118.

In the Peytavin case, last cited, the court says:

"It is of the essence of legal evidence in support of it [a promise to pay conventional interest], that it be written."

The French commentators on article 1907 of the Code Napoleon (our article 2924 being practically the same) agree with this view. Carpentier DuSaint Repertoire du droit Francais, verbo, Interests, No. 101, says:

"Pont thinks * * * that the necessity for writing concerns the stipulation for interest itself. Otherwise, he says, Article 1907 would be without object, since the law of September 3, 1807, has established a legal rate."

"The stipulation for interest ought to be made in writing, testimonial proof is not admissible to establish such a stipulation, even when the amount involved is less than 150 francs"—citing numerous authorities. Fuzier-Herman, Code Civil Annote, art. 1907, N. 5.

See, also, Sirey, Civil Code Annote (art. 1907, No. 1) which, identical with the above, also cites still further and additional authorities.

Dalloz, Civil Code Annote (art. 1907, N. 5) says:

"Every stipulation for interest ought to be in writing, proof by witnesses of a verbal convention is inadmissible, even when the value in question is less than 150 francs."

When the Code Napoleon was adopted in 1804, there was no limit on the amount of conventional interest. A limit was imposed by the law of September 3, 1807. Dalloz says that this law "did not abrogate the dispositions of Article 1907, relative to the necessity for a writing which stipulates the rate of conventional interest." Code Civil Annote, art. 1907, N. 4.

The French authorities, therefore, commenting on the article of the Code Napoleon, to which our codal provisions may be traced, are not inappropriate here. From these we quote as follows: Baudry-Lacantiniere T. XXIII, p. 508 et seq. states:

"902. But a formal convention is necessary for the loan to produce interest and it is necessary that the will of the parties be expressed in terms which leave no doubt; in other terms, the judge cannot seek from circumstances the tacit will of the parties. The results from the word stipulate employed in Art. 1505, according to which one may stipulate interest and yet more so from necessity for a writing imposed by Art. 1907. * * *"

"908. That which ought to be fixed in writing, is not only the convention stipulating that interest will be due, but also the very rate of the interest or at least enough indications that the rate may be calculated."

Mourlon, vol. 3, page 392:

"Thus the stipulation for interest and the rate at which the loan was made could not be proven, either by witnesses or the admission of the debtor; written proof alone was admitted."

Duranton, vol. 17, No. 598:

"But, with the view, probably, of placing a check on the cupidity of lenders, the same article (1907) demands that the rate of conventional interest be fixed by writing. That means clearly to say that proof by witnesses of a verbal convention for interest is inadmissible, even when the value in question is less than 150 francs."

From the history of the law, as embodied in article 2924 of our Revised Civil Code, and the interpretations placed thereon by eminent students and commentators of the Code Napoleon, from which our present article is derived, it is clear, we think, that the stipulation for conventional interest in all contracts carrying such interest, regardless of the rate stipulated, must be in writing in order that same may be admitted in evidence. We have quoted from these authorities rather at length for the reason, as previously stated, that the question of admissibility of evidence by parol to prove stipulation of conventional interest at a rate less than the legal rate of 5 per cent, so far as we have been able to learn, has never been passed upon by the courts of this state.

Upon the other questions raised in this case, the conclusions reached thereon by the district judge were also correct. However, since we conclude that the exception of no cause of action was well taken, and, although overruled, objections were timely made to the introduction of testimony, we do not deem it necessary to discuss the other issues raised on the trial of the case, further than what we have already stated at the outset. The district judge finally and correctly concluded that the exception was good, as shown by his written opinion.

For the foregoing reasons, the exception of no cause or right of action is sustained, and the judgment appealed from is affirmed on both the law and the facts.