LANDRY, Judge.
This is an action by the furnisher of certain building materials and supplies to recover the cost thereof from defendants, Milton J. Basso (sometimes hereinafter referred to simply as “Basso”), the subcontractor who ordered the materials and supplies; Wilson P. Abraham d/b/a Wilson P. Abraham Construction Company, the prime contractor, (sometimes hereinafter referred to simply as “Abraham” or “contractor”) and Trinity Universal Insurance Company, the surety on Abraham’s building contract and bond, (sometimes hereinafter designated simply as “Trinity” or “Surety”). Abraham and Trinity filed third party demands against Basso, who answered and filed his own third party action against said contractor and surety. Although the account sued on reflects a balance due in the sum of $4,693.69,. after trial on the merits, our learned brother below rendered judgment in favor of plaintiff and against defendants, Basso, Abraham and Trinity, in solido, in the amount of $3,609.50, from date of judicial demand, until paid, and against defendant Basso, individually, in the sum of $1,084.19, together with interest from judicial demand, until paid. The trial court also rendered judgment in favor of Abraham and Trinity against Basso in the sum of $3,609.50, on the third party demand and dismissed Basso’s third party petition against Abraham and Trinity. All costs were assessed against Basso alone.
Plaintiff and Basso have appealed separately. Contractor and surety have neither appealed nor answered the appeals taken herein, nor have either of said parties filed briefs in this court. It is conceded defendant Abraham has paid plaintiff the sum of $3,609.50 for which said defendant was cast below.
The appeal of plaintiff Levingston Supply Co., Inc., seeks our review of the following errors allegedly committed by the trial court to plaintiff’s prejudice to-wit: (1) deduction of the price of certain items not used on the contract job in question, which items, because of legal imputation of payment, were paid prior to institution of plaintiff’s suit and form no part of the claim herein sued on; (2) concluding that 50 toilet seats were charged against the account and deducting the cost of 25 of such items on the finding that only 25 such items were used on the job; (3) allowing interest on plaintiff’s judgment only -from date of judicial demand instead of from the due date of the account; and, (4) assessing costs against the impecunious debtor Basso only rather than against all defendants in solido.
*143 The appeal of defendant Basso alleges error on the part of the trial court in the following respects, namely: (1) holding Basso liable as a subcontractor whereas in truth and in fact said defendant was not liable to plaintiff at all considering he was a mere employee or disclosed mandatary of Abraham; and (2) granting judgment in favor of Abraham and Trinity against Basso on the third party demand, notwithstanding there had been no accounting between Basso and Abraham.
A clearer understanding of the aforesaid issues presented by these appeals will be afforded by narration, at this point, of certain attending circumstances concerning which there is little or no dispute between the litigants.
It is readily conceded that Basso, a master plumber and plumbing contractor, was engaged in the simultaneous performance of plumbing work on several construction projects being undertaken by Abraham, a general contractor. It is further conceded it was the custom of Basso in purchasing materials to specify to the vendor and supplier the name of the particular project for which the materials were desired. Insofar as plaintiff is concerned each and every invoice constituting the account sued on indicated the materials purchased were for a project known as Mayfair Park. The invoices were receipted in each instance by defendant Basso or some member of his concern.
Abraham required no bond of Basso as subcontractor. It is undisputed that as the several jobs progressed, Basso would present Abraham with invoices for materials and Abraham would then make a check payable jointly to Basso and the supplier for the amount of the invoice and indicate on the check the particular job to which the check was charged. Each week Basso would present Abraham a statement for labor and Abraham would issue Basso his check payable to Basso alone for the amount shown and specify the particular project to which the payment would be credited. Checks payable jointly to Basso and material suppliers were then endorsed by Basso and tendered the co-payee; those payable to Basso alone for labor were deposited to Basso’s own account. By arrangement with Abraham, plaintiff sent Abraham a copy of each invoice for material destined for the Mayfair project. It is acknowledged that the first two invoices submitted by plaintiff were paid by Abraham’s check made jointly to plaintiff and Basso for the exact amount of said invoices. Basso’s education being limited to the seventh grade, his bookkeeping was performed by his wife whose system admittedly left much to be desired although the records thusly maintained appear to have been adequate for Basso’s purposes.
Despite the presence in the record of a written formal contract between Basso and Abraham wherein the former undertook to perform the plumbing work on 25 houses in Mayfair Park for the unit price of $604.00 per residence and the admission in Basso’s answer acknowledging he was a subcontractor, esteemed counsel for Basso nevertheless contends Basso was a mere employee or disclosed mandatary of Abraham. Able counsel so contends on the premise that since it was customary for Abraham to make checks payable jointly to Basso and materialmen in the amount of invoices submitted for materials and to Basso alone for labor performed, it follows there was no provision for any profit to Basso consequently he could be nothing more than an employee. The contention Basso was the disclosed mandatary of Abraham is bottomed on Abraham’s admission he received copies of all invoices for materials purchased by Basso for use in any projects on which Abraham was the prime contractor and upon the testimony of plaintiff’s Secretary-Treasurer, Sam Levingston, who testified that all payments on plaintiff’s account were made by Abraham’s checks payable jointly to Basso and plaintiff.
We believe the contention that Basso was Abraham’s employee or disclosed *144 mandatary is patently without foundation in the record. Not only is there a written contract between Abraham and Basso of record herein as hereinbefore shown, but also as previously stated, Basso’s answer unqualifiedly admits he was a subcontractor. In addition, Basso’s testimony taken during trial, as well as that of his son-in-law, C. J. Hood, Jr., who served as Basso’s estimator, unequivocally shows Basso was in fact a subcontractor. Neither, in our opinion, does the testimony of Sam Levingston, establish the relationship between Basso and Abraham as anything except that of contractor and subcontractor. Admittedly Levingston testified he would not have extended credit in any appreciable amount to .Basso except for an understanding with Abraham that copies of invoices would be sent Abraham who would make checks therefor payable jointly to Basso and plaintiff and charge the amount thereof to plaintiff’s account. We have carefully perused Levingston’s testimony and find that at no time did he state Abraham agreed to be personally bound for the account. In essence Levingston testified the materials were sold to Basso and charged to Basso’s account alone with the aforesaid understanding. We find nothing in Levingston’s testimony suggesting credit was being extended Abraham or that Levingston regarded Abraham as surety on Basso’s account.
It is' significant that when requested by Basso to make payment for labor due, Abraham made checks payable to Basso and charged them to whatever jobs on which Basso had balances due from Abraham, irrespective of the job on which the labor had actually been performed. Under the circumstances shown, we have no hesitancy in concluding Basso was in fact a subcontractor and not an employee or disclosed man-datary of Abraham as contended.
Plaintiff prayed for judgment in its favor for interest on the amount allegedly due from November 1, 1962, plus $25.00 (the cost of recording its lien) and 10% on said principal, costs and interest, as attorney’s fees. The judgment rendered below in favor of all defendants in solido was for the aforesaid principal demand after deducting therefrom the cost of certain material which the court found was not used on the Mayfair project. Judgment for the cost of these excepted items was rendered against Basso, individually.
The first question presented by the appeal of Levingston is whether the trial court correctly deducted from the judgment against all defendants in solido the sum of $669.00 being the amount of Invoice No. 608, dated June 5, 1962, for 17 water heaters and valves which Levingston concedes were not used on the Mayfair project. Levingston contends, however, Invoice 608 was paid by imputation of certain payments made by Basso prior to institution of this action consequently said invoice and the amount thereof was improperly disallowed by the trial court as against Abraham and Trinity. The trial court also deducted from the judgment against Abraham and Trinity the amount of $328.94 represented by Invoice 1720, dated June 20, 1962, covering 8 water heaters and valves which, though invoiced to the Mayfair job, was admittedly diverted to another project. Plaintiff, however, does not contend these 8 heaters were paid for by imputation of credits and concedes the trial court correctly disallowed this sum as to defendants, Abraham and Trinity.
The account in question was opened May 21, 1962, on which date purchases in the sum of $265.74 were made and charged separately to the Mayfair project account which was entered on plaintiff’s books solely in the name of Basso. Payment for the 17 water heaters represented by Invoice 608 dated June 5, 1962, is said by plaintiff to result from imputation of three payments made on the account June 18, July 2, and July 20,1962, in the sums of $441.27, $370.50 and $1,683.44, respectively, the aggregate thereof being sufficient to pay Basso’s account in full through Invoice No. 608 of June 5, 1962. On this premise plaintiff maintains the 17 water heaters represented by Invoice 608 and concededly diverted to *145 another job were in fact paid for prior to institution of this suit. Plaintiff further urges that since Basso acknowledges all remaining items on the account (save only the 8 heaters sold as per Invoice 1720 dated June 20, 1962) were actually used on the Mayfair project, plaintiff is entitled to judgment against all defendants in the additional sum of $669.00.
If, therefore, as plaintiff contends, the aforesaid payments may be properly imputed to the oldest items on Basso’s account in accordance with the provisions of LSA-C.C. Article 2166, Invoice No. 608 was fully satisfied and paid, forms no part of plaintiff’s claim and plaintiff is entitled to judgment against all defendants in solido for said further sum.
 It is settled law that general credits on an open account stand as payments imputed on the oldest items, unless a different imputation is clearly indicated. Electrical Supply Co. v. Eugene Freeman, Inc, 178 La. 741, 152 So. 510; Folse v. Maryland Casualty Co., La.App, 193 So. 385; Hattiesburg Mfg. Co. v. Pepe, La.App., 140 So.2d 449. There is absolutely nothing in the record to indicate Basso intended to apply the payments in question to any particular item or items on the account. Plaintiff is entirely within its rights in imputing the payments in question to the oldest items on the account thereby effecting payment for the 17 heaters covered by Invoice No. 608. It follows there is no claim in the present suit for the price of the heaters sold pursuant to Invoice No. 608. Subsequent to the third payment of July 20, 1962, in the amount of $1,683.44, 25 additional heaters were admittedly purchased by Basso and incorporated into the Mayfair houses. These have not been paid for and are included as items in the account herein sued upon. We find, therefore, our learned brother below erred in deducting the sum of $699.00 from the judgment rendered against the contractor and surety.
Our esteemed brother below likewise found plaintiff’s account contains charges for 50 White Beneke toilet seats whereas only 25 such items were actually used in the Mayfair project. On such finding the cost of 25 seats was deducted from the balance shown on the account. It also appears six additional seats were included as another item of the account but it is conceded these were purchased to replace seats damaged on or stolen from the job site and defendants raise no question regarding these seats. The trial court’s deduction of the cost of such seats obviously resulted from inadvertent error inasmuch as the account shows on its face no charge was entered for Invoice No. 4156 upon which delivery of 25 seats was made. In this regard there appears of record plaintiff’s Invoice No. 4576-1 covering, inter alia, 25. toilet seats, making a charge therefor and indicating their delivery as per another ticket on which no charge was entered. The record shows said seats are valued at $2.25 each. The amount of $56.25 deducted for said items was therefore improperly charged against plaintiff’s account by the. trial court.
By letter dated October 29, 1962, plaintiff notified defendants a lien had been filed against the Mayfair project. It is shown the notice was received by defendants October 30, 1962. In its petition plaintiff' prayed for interest from November 1, 1962. Plaintiff’s contention that the trial court erroneously allowed interest from date of judicial demand (December 31, 1962) instead of November 1, 1962, is predicated upon LSA-C.C. Article 1938 which provides as follows:
“Art. 1938. Time from which legal interest is due
“Art. 1938. All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated.”
Prior to adoption of the Louisiana Civil' Code, 1870, the law regarding interest allowable on accounts sued upon appeared to, *146 be somewhat in conflict. In the very early case of Merieult v. Austin (1814) 3 Mart. (O.S.) 318, the court held that irrespective of custom, interest upon running accounts was collectible only from judicial demand in the absence of an understanding between debtor and creditor as to payment of interest. The Merieult case, supra, however, was subsequently overruled by Lafon’s Executors v. Riviere, 1 Mart. (N.S.) 130, wherein it was held interest on open account runs from date of judgment
Following Lafon’s Executors, supra, Thompson v. Mylne (1849) 4 La.Ann. 206, contains the following pronouncement on the subject under discussion:
“ * * * it is well settled that, when it is the custom of a place and the practice of the parties to strike a balance at fixed periods, and to render the account, it brings it to the case of a fresh agreement, at the beginning of each period, to lend the sum then due; though acquiescence in the account réndered is not considered per se an agreement to it, it is evidence from which it may be inferred that the party who receives the account without objection, thereby agreed to continue the course of dealing and to retain the balance in his hands, rather than to pay it; the balance due is viewed as the capital of the creditor, which he leaves in the debtor’s hands, on paying interest. The rule is that where regular merchant’s accounts arc settled from time to time, interest on interest is allowed.”
In 1857 Keane v. Branden, 12 La.Ann. 20, established the principle that where an account has been rendered and a balance struck which has been acquiesced in by the debtor, interest may subsequently be charged on such balance though part thereof be formed of anterior interest, provided, of course, the interest charged on the balance be not usurious.
Notwithstanding the foregoing jurisprudence, White v. Jones (1859) 14 La.Ann. 681, held that in a suit on open account interest is allowable only from date of judicial demand in the absence of written agreement to the contrary. The decision cites Articles 1935 and 2895 of the Civil Code of 1825 which are the counterpart of Articles 1940 and 2924 of the Revised Civil Code of 1870. The decision, however, makes no mention of Civil Code 1825, Article 1932 (See Article 1938, Revised Civil Code, 1870), which prescribed the time from which legal interest was due.
Following adoption of the Revised Civil Code of 1870, Article 1938, hereinabove cited in full, the rule of Keane v. Branden, supra, was followed in Brodnax v. Steinhardt (1896) 48 La.Ann. 682, 19 So. 572, wherein it was held an account rendered and accepted, showing the amount due, authorizes the charge of subsequent interest thereon, notwithstanding accrued interest is included therein.
We note that in Hallowell Granite Works v. Orleans, 144 La. 419, 80 So. 610, the Supreme Court held interest does not accrue on an open account on which payments are being made from time to time and which is not considered past due. The court further held the only interest collectible on such an account was 5% from date of judicial demand. However, no reason for such ruling was given therein and apparently interest was not an issue in the case.
Without citation of authority or other explanation, the Supreme Court in Silberberg v. Kalil & Mickal, 159 La. 560, 105 So. 620, held that judgment in a suit on open account bears legal interest from date of judicial demand. It is to be noted, however, that in the Silberberg case, supra, the due date of the indebtedness was not established. Under similar circumstances, the same conclusion was reached in Board of Levee Com’rs of Orleans Levee District v. Hulse, 167 La. 896, 120 So. 589.
In 1930, the Court of Appeal, Second Circuit, held that where an account is closed interest runs from the date it was closed. *147 Wisdom v. Latex Iron & Steel Works, 13 La.App. 657, 127 So. 101. The same Court of Appeal subsequently held that where the record does not show the date on which the debt became due, the obligation is considered matured when suit is filed and bears interest from date of judicial demand. See Three Rivers Hardwood Lumber Co. v. Gibson, La.App., 181 So. 607, which cited American Hardwood Lumber Co. v. Kesterson, 147 La. 840, 86 So. 285.
It would appear therefore the jurisprudence in effect holds that where the due date of the obligation is not expressly shown by the creditor, interest on an open account is recoverable only from the date of the judicial demand.
In the case at bar plaintiff has not established the due date of the account herein sued upon. Admittedly plaintiff made demand on defendants but it is neither contended nor shown demand was necessary to mature the obligation consequently it does not follow, as plaintiff contends, interest is due from date of the aforesaid demand. Obviously the account matured prior to the filing of this action, otherwise plaintiff would not have been entitled to enter suit thereon. Plaintiff, however, has failed to establish the exact due date and therefore is entitled to interest only from date of judicial demand. LSA-C.C. Article 1938, Hallowell Granite Works v. Orleans, supra, Silberberg v. Kalil & Mickal, supra, Board of Levee Com’rs of Orleans Levee District v. Hulse, supra.
In oral argument before this court counsel for plaintiff argues judgment should be entered in plaintiff’s favor against all defendants, in solido, in the further sum of $25.00 allegedly representing the cost of recording said appellant’s lien, which said item was disallowed by the trial court. While plaintiff timely prayed for said item and was entitled to recover the amount expended in recording its lien pursuant to the provisions of LSA-R.S. 9:4801, plaintiff, nevertheless, may not be awarded judgment herein for said amount because the record is barren of proof with regard to this claim. It is elementary that plaintiff must produce proof in support of each and every element of his claim. Considering plaintiff’s failure to adduce any proof whatsoever in support of this claim, it must be denied.
Plaintiff’s final contention is the trial court improperly taxed costs only against Basso whom the record discloses to be in impecunious circumstances whereas costs should have been taxed against all defendants in solido. We deem plaintiff’s position well taken inasmuch as we consider the purpose of the bond posted by Abraham with Trinity as surety in compliance with LSA-R.S. 9:4801-4841, inclusive, more particularly LSA-R.S. 9:4802, is to insure a source from which the persons thereby entitled to a lien may obtain payment of their claims in full. We therefore exercise the discretion vested in us pursuant to LSA-C.C.P. Article 2164 and assess all costs in the court below, as well as those on appeal against defendants Basso, Abraham and Trinity, in solido.
The remaining .issue is Basso’s contention the trial court erroneously rendered judgment against him and in favor of Abraham and Trinity on the third party demand. In this regard, Basso urges said third party demand be rejected and the matter remanded to the trial court for an accounting between him and Abraham.
As previously shown, it is conceded Basso was subcontractor on numerous jobs on which Abraham was prime contractor. It also appears that while it was customary for Abraham to issue checks payable jointly to Basso and certain material suppliers in payment of material invoices, it is also shown that, with Abraham’s knowledge and consent, checks charged against the amount due Basso on a particular project were in fact employed by Basso in paying for material used on a different job. In this regard Abraham’s testimony reveals that, as Basso needed funds to pay for materials and supplies used on the various jobs in *148 progress, he, Abraham, issued his check payable to Basso and the supplier to be paid thereby and debited the amount thereof from an account on which Basso had a remaining credit due from Abraham even though the materialman thus paid had furnished no material to the job against which Abraham’s payment to Basso was charged. The significance of this arrangement is manifest in the fact that of the $15,100.00 allegedly paid Basso by Abraham for the 25 units in Mayfair Park at $604.00 per unit, checks numbers 4908, 4909, 4910, 4911 and 4912, in the sums of $817.97, $360.55, $104.-49, $784.56 and $1,268.29 were made to Basso and materialmen other than Levingston and charged by Abraham to the amount owed Basso on the Mayfair project. Although these checks appear in the record, there is nothing to indicate their introduction in evidence. Moreover, Abraham’s ledger sheet showing alleged payment in full to Basso of the contract price due for the Mayfair Park project was timely objected to by counsel for Basso. While Abraham may have in fact paid Basso in full for all sums due Basso on the Mayfair Park project, the record as presently constituted, does not so show with that degree of certainty required by law. In view of the present condition of the record and the fact that Basso may well have credits due on other projects which would offset to some degree the amount claimed by Abraham in his third party demand against Basso, we believe the interest of justice will be served by rejecting and dismissing the third party demands of all defendants as of non-suit, reserving to Basso and Abraham the full right of an accounting of their mutual affairs in a separate action and to Trinity its full rights against Basso, if any, as sub-rogee of its insured, Abraham.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff, Levingston Supply Co., Inc., against defendants, Milton J. Basso, Wilson P. Abraham d/b/a Abraham Construction Company and Trinity Universal Insurance Company, in solido, be and the same is hereby increased from the sum of $3,609.50 to the full sum of $4,334.75 and judgment rendered herein in favor of said plaintiff against said defendants, in solido, in said sum of $4,334.75, together with interest thereon at the rate of five (5%) per cent per annum from date of judicial demand, until paid.
It is further ordered, adjudged and decreed the judgment of the trial court in favor of plaintiff, Levingston, and against defendant, Basso, individually, in the sum of $1,084.19 be and the same is hereby reduced to the sum of $358.94 and judgment rendered herein in favor of plaintiff, Lev-ingston, and against said defendant Basso, individually, in the full sum of $358.94, together with interest thereon at the rate of five (5%) per cent per annum from date of judicial demand, until paid.
It is further ordered, adjudged and decreed the judgment of the trial court in favor of third party plaintiffs, Abraham and Trinity, against third party defendant, Basso, in the sum of $3,609.50, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said third party defendant dismissing and rejecting the demands of said third party plaintiffs as of nonsuit, reserving to said Basso and Abraham the full right to an accounting of their mutual affairs in a separate action and to Trinity its full rights, if any, against Basso as subrogee of its insured, Abraham.
It is further ordered, adjudged and decreed the judgment of the trial court assessing costs against defendant Basso alone shall be and the same is hereby amended and judgment rendered herein in favor of plaintiff and against defendants, casting defendants, Basso, Abraham and Trinity, in solido, for all costs of these proceedings both in the trial court and on this appeal.
Affirmed in part, amended in part, reversed in part and rendered.